# United States Court of Appeals for the Federal Circuit

---

**DAWN HALL,**

*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**

*Defendant-Appellee.*

---

2011-5119

---

Appeal from the United States Court of Federal Claims in Case No. 09-CV-239, Senior Judge Bohdan A. Futey.

---

Decided: April 30, 2012

---

RICHARD A. REGNIER, Law Offices of Richard A. Regnier, of Camarillo, California, argued for plaintiff-appellant.

ELIZABETH ANNE SPECK, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and FRANKLIN E. WHITE, JR., Assistant Director.

---

Before LOURIE, MOORE, and WALLACH, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* WALLACH.
Opinion dissenting in part filed by *Circuit Judge* LOURIE.

WALLACH, *Circuit Judge.*

Dawn Hall, a Naval Criminal Investigative Service ("NCIS") engineer who was terminated from her employment for voluntary grand jury service over a two year period, appeals a decision of the United States Court of Federal Claims ("Claims Court"). The Claims Court granted summary judgment in favor of the Government with regards to her pre-removal back pay claim and granted the Government's motion to dismiss for a lack of subject matter jurisdiction with regards to her post-removal claims for back pay, reinstatement, and other forms of compensation. Because the Claims Court erred in interpreting 5 U.S.C. § 6322(a) on summary judgment and because we have already decided the Claims Court's jurisdiction with regard to Ms. Hall's post-removal claims, we *reverse* and *remand* in part, and *affirm* in part.

I.

The Department of the Navy hired Ms. Hall as an engineer in 1984. In 2002, she agreed to a transfer that would move her from California to Washington, D.C. The Navy agreed to delay Ms. Hall's transfer until July 2003 because of her mother's poor health. In March 2003, Ms. Hall voluntarily completed and submitted a Prospective Grand Jury Nominee Questionnaire to serve as a grand juror for the Superior Court of California, County of Ventura. On June 20 of that year, Ms. Hall was "summoned by the court" to appear on July 1 where she was

selected from a pool of nominees and sworn to serve as a grand juror for the next twelve months.[1]

Ms. Hall contacted her naval supervisor after she was selected to serve as a grand juror, writing, "I was selected and sworn in for the Ventura County Grand Jury today. Starting today, 01JUL03, I will be on court leave until 01JUL04. I will provide a confirmation letter from the Grand Jury when it is available." The Navy described Ms. Hall's conduct as "troubling," but notwithstanding paid her while she served as a grand juror in accordance with 5 U.S.C. § 6322(a), which entitles federal employees to take court leave without any loss in pay.

In May 2004, the Navy ordered her to report to Washington no later than July 14, 2004 and specifically "directed [Ms. Hall] not to seek or accept extension of [her] grand jury duties." At some point prior to that order, however, Ms. Hall had discussed serving a second year as a foreman on the grand jury with presiding Judge Bruce Clark and the current Grand Jury foreman. After receiving the Navy's order, Ms. Hall contacted the Office of Personnel Management ("OPM") and asked whether her employer could direct her not to serve on the grand jury. On June 21, 2004, Ms. Hall was again "summoned by the court" and sworn to serve as a grand juror for a second and final year.[2] On June 28, 2004, Ms. Hall informed the

---

[1]    Grand juries do not, "like trial juries, decide guilt or innocence, but instead perform primarily investigative functions." *Hall v. United States*, 99 Fed. Cl. 223, 226 (2011). "The panels that Hall served on prepared reports on health care, elder abuse, jail closures, and more." *Id.*

[2]    In California, a grand jury may be comprised of randomly selected jurors as well as holdover jurors from the previous grand jury term. *See* Cal. Penal Code § 901(b) ("If the superior court so decides, the presiding judge may name up to 10 regular jurors not previously so

Navy that she would be serving an additional year on the grand jury.

Shortly after beginning her second term on the grand jury, the Navy placed Ms. Hall on absent without leave ("AWOL") status and withheld her pay. Ms. Hall appealed the Navy's AWOL determination to the Merit Systems Protection Board ("MSPB") and then, in March 2005, applied to the OPM for a determination as to whether she was entitled to court leave.[3] Just as Ms. Hall's second, and final, term on the grand jury was to expire, and while her request to the OPM was still pending, the Navy removed Ms. Hall from her position effective June 29, 2005 because of her (1) failure to report to duty in Washington, D.C. on July 14, 2004; (2) failure to obey a letter from the Navy directing Ms. Hall not to seek or accept an extension of her grand jury duties; and (3) AWOL status since July 14, 2004. Ms. Hall appealed the Navy's decision to the MSPB, although that appeal was later dismissed.[4]

_____

named, who served on the previous grand jury and who so consent, to serve for a second year.").

[3] The MSPB Regional Office in Washington, D.C. dismissed Ms. Hall's claim for lack of jurisdiction because the Navy's "placement of an employee in an AWOL status is not by itself an action appealable to the [MSPB]." *Hall v. Dep't of the Navy*, Initial Decision, No. DC-3443-05-0138-I-1, 2005 MSPB LEXIS 1253, at *3 (M.S.P.B. Feb. 7, 2005).

[4] On September 9, 2005, the MSPB dismissed Ms. Hall's appeal without prejudice pending the outcome of the March 2005 OPM proceeding. *Hall v. Dep't of the Navy*, Initial Decision, No. DC-0752-05-0629-I-1, 2005 MSPB LEXIS 5828, at *2 (M.S.P.B. Sept. 9, 2005). The MSPB stated Ms. Hall could re-file her appeal "within 30 days after the date of receipt of a final OPM decision regarding her pending claim of entitlement to court leave, but in no event . . . later than December 2, 2005." *Id.* On

On April 20, 2009, Ms. Hall filed suit in the Claims Court seeking back pay for the time the Navy listed her as AWOL and withheld pay prior to her removal pursuant to 5 U.S.C. § 6322(a) and the Back Pay Act, 5 U.S.C. § 5596. Additionally, with regards to her post-removal claims, Ms. Hall sought reinstatement and other forms of compensation as a result of her removal and various alleged constitutional violations. The Claims Court dismissed Ms. Hall's claims for lack of subject matter jurisdiction, holding that the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7512, provides the MSPB with exclusive jurisdiction over removal actions and that all of Ms. Hall's claims stemmed from her removal. *Hall v. United States*, 89 Fed. Cl. 102, 108 (2009). Ms. Hall appealed to this court.

We reversed and remanded the case back to the Claims Court, finding that Ms. Hall's claims arose from two discrete actions. *Hall v. United States*, 617 F.3d 1313, 1317 (Fed. Cir. 2010) ("*Hall I*"). The first, Ms. Hall's claim for pre-removal back pay, "became ripe as soon as she was placed on AWOL status and deprived of pay. That claim did not arise from or turn on her removal from service. Nor did the fact of her removal, once it occurred, change any aspect of her claim to pre-removal pay." *Id.* Thus, we held, the Claims Court had jurisdiction over Ms. Hall's pre-removal back pay claim. *Id.* The second, Ms. Hall's claims for post-removal back pay and reinstatement, we held, "were predicated on the removal action. As to those ancillary claims, we agree with the Court of Federal Claims that it lacked jurisdiction." *Id.*

---

January 12, 2006, the OPM dismissed Ms. Hall's application, finding that Section 6322(a) only applied to compulsory, and not voluntary, jury duty. Ms. Hall did not attempt to re-file her claim with the MSPB.

On remand to the Claims Court, Ms. Hall and the Government each filed a motion for summary judgment with respect to the pre-removal back pay claim. The Government additionally filed a motion to dismiss Ms. Hall's post-removal claims for lack of subject matter jurisdiction. The Claims Court granted the Government's motion for summary judgment, denied Ms. Hall's motion for summary judgment, and granted the Government's motion to dismiss. *Hall v. United States*, 99 Fed. Cl. 223, 234 (2011). Ms. Hall filed a timely Notice of Appeal; we have jurisdiction over the present appeal pursuant to 28 U.S.C. § 1295(a)(3).

## II.

We review the Claims Court's statutory interpretation *de novo. W. Co. of N. Am. v. United States*, 323 F.3d 1024, 1029 (Fed. Cir. 2003). We also review *de novo* the Claims Court's decision to dismiss a claim for lack of subject matter jurisdiction. *Brown v. United States*, 86 F.3d 1554, 1559 (Fed. Cir. 1996).

This case centers on the proper meaning of the word "summoned" in 5 U.S.C. § 6322(a). That law, in its relevant part, states:

(a) An employee [with limitations not here applicable] is entitled to leave, without loss of, or reduction in, pay, leave to which he otherwise is entitled, credit for time or service, or performance of efficiency rating, during a period of absence with respect to which he is *summoned*, in connection with a judicial proceeding, *by a court or authority responsible for the conduct of that proceeding*, to serve--

(1) as a juror; or

> (2) . . . as a witness on behalf of any party in con-
> nection with any judicial proceeding to which the
> United States, the District of Columbia, or a State
> or a local government is a party; . . . .

5 U.S.C. § 6322(a) (emphasis added). Subsection (c) of the
statute permits the OPM to prescribe regulations to
administer Section 6322, although it has not yet done so.
*Id.* § 6322(c).

The Claims Court interpreted Section 6322(a)(1) as
not applying to a grand juror who voluntarily applied for
service even where a court issued a summons requiring
that juror to appear in court. The Claims Court granted
summary judgment in favor of the Government, holding
that:

> In light of the legislative history, the absurd re-
> sult of potentially limitless service on voluntary
> juries, and [the Government Accountability Of-
> fice's] limitations imposed on section 6322(a)'s
> witness leave, the Court finds it is "unreasonable
> to believe that the legislat[ure] intended to in-
> clude" service such as Hall's.

*Hall*, 99 Fed. Cl. at 233 (quoting *Church of the Holy
Trinity v. United States*, 143 U.S. 457, 459 (1892)). The
Claims Court correctly began its analysis with the plain
language of Section 6322(a), acknowledging that it sug-
gests any juror who receives a summons, whether com-
pulsory or voluntarily obtained, is entitled to court leave.
*Id.* at 228. The Claims Court then employed the canon of
statutory construction *in pari materia*, which instructs
courts to "interpret statutes with similar language that
generally addresses the same subject matter together, as
if they were one law," interpreting the section at issue
with Section 6322(a)(2), which concerns court leave for
serving as a witness. *Id.* at 229 (quoting *Strategic Hous.*

*Fin. Corp. of Travis Cnty. v. United States*, 608 F.3d 1317, 1330 (Fed. Cir. 2010) (internal citations omitted)).[5]  The Claims Court then found that "the bare text of section 6322(a) contains overbroad language that could produce an absurd result, such as allowing an employee unlimited court leave." *Id.* at 231.  Thus, the Claims Court turned to the legislative history regarding the original version of the court leave statute enacted in 1940, legislative history regarding an amended version of the statute enacted in 1970, as well as administrative interpretations of Section 6322(a) by the Government Accountability Office ("GAO") Comptroller General to find support for the court's interpretation that Section 6322(a)(1) was not intended to cover voluntary service. *Id.* at 231-32.[6]

Additionally, the Claims Court found it lacked subject-matter jurisdiction over Ms. Hall's post-removal claims for back pay, reinstatement, and ancillary claims. *Id.* at 233-34.  With regards to our previous opinion that found the Claims Court did not have jurisdiction over these claims, the Claims Court stated: "Regardless of whether or not the Federal Circuit's statement was dictum, it was correct." *Id.* at 233.

Ms. Hall brings two general arguments before this court on appeal.  First, she argues that the Claims Court erred in its reading of the Section 6322(a) and as a result improperly granted the Government's motion for summary judgment.  Second, Ms. Hall argues that the Claims

---

[5]    The Claims Court, however, rejected the Government's arguments that Section 6322(a) and 5 U.S.C. § 7106(a) should be interpreted *in pari materia. Hall*, 99 Fed. Cl. at 229.

[6]    The Claims Court did not afford any deference to OPM's January 2006 decision nor previous administrative decisions from the GAO that interpreted 5 U.S.C. § 6322(a). *Hall*, 99 Fed. Cl. at 230-31.

Court erred in granting the Government's motion to dismiss her post-removal and ancillary claims.

Ms. Hall argues that the word "summoned" in Section 6322(a) applies to any grand juror who receives a summons, regardless of whether the juror voluntarily applied for service, for as long as a summons is in effect. Appellant reasons that the Claims Court's reading of the statute effectively nullifies Cal. Penal Code § 901(b), which allows grand jurors to serve a second year, by imposing a *de facto* one-year limitation on court leave for grand jury service. Ms. Hall further faults the Claims Court for venturing beyond the plain meaning of Section 6322(a), for incorrectly applying the absurdity doctrine, and for misapplying the canon of *in pari materia*. Moreover, Ms. Hall avers that the legislative history cited by the Claims Court does not suggest Section 6322(a) is limited only to those jurors who do not volunteer for service.

In response, the Government argues that the term "summoned" is not defined in the statute and is ambiguous. It contends that Section 6322(a) does not permit Ms. Hall "to take a two-year vacation from work at taxpayer expense," Plaintiff-Appellant's Brief at 18, and that permitting Section 6322(a) to apply to "voluntary" grand jury service would "permit an employee to draw a nearly six-figure salary for two years and possibly in other circumstances for a potentially indefinite duration," *id.* at 23. The Government further avers that "Congress [could not] possibly have intended for 5 U.S.C. § 6322 to serve as a license for Federal employees to *voluntarily* disregard their work obligations for such an extended period." *Id.* at 36. As a result, the Government concludes that the Claims Court properly applied the absurdity doctrine and that legislative history demonstrates that Congress intended Section 6322(a) to apply only to non-voluntary juror service.

We reject the Government's argument; the Claims Court wrongly interpreted the term "summoned" in Section 6322(a). The statute is clear on its face and entitles a grand juror to court leave when summoned, regardless of whether the grand juror volunteered to be summoned. Additionally, a plain reading of Section 6322(a) would not lead to an absurd result that would prevent us from reading the statute according to its terms.

When interpreting a statute, we start with its language. *Williams v. Taylor*, 529 U.S. 420, 431 (2000). "[H]owever, courts must consider not only the bare meaning of each word but also the placement and purpose of the language within the statutory scheme." *Barela v. Shinseki*, 584 F.3d 1379, 1383 (Fed. Cir. 2009). Section 6322(a) states that a Government employer must pay court leave to an employee "during a period of absence with respect to which he is *summoned*, in connection with a judicial proceeding, *by a court or authority* responsible for the conduct of that proceeding . . . ." 5 U.S.C. § 6322(a) (emphasis added). The statute reflects a singular concern that a court or similar authority, through use of its summons power, orders an individual to appear as a juror or witness before that individual may receive court leave.[7]

---

[7] The term "summoned" is unambiguous in Section 6322(a), although it is undefined in the statute. "A phrase appearing in the context of a statute may be unambiguous where it 'has a clearly accepted meaning in both legislative and judicial practice' . . . ." *Gardner v. Brown*, 5 F.3d 1456, 1459 (Fed. Cir. 1993) (quoting *W.V. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991)). In the context of grand juror selection, an individual is "summoned" when a court issues a summons, which requires the individual by the force of law to appear before the court. *See* Cal. Penal Code § 907. When Ms. Hall submitted her Prospective Grand Jury Nominee Questionnaire

Nowhere does the statute distinguish between those who welcome or even encourage a court to issue a summons from those who must begrudgingly accept it.

"When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)); *see Norfolk Dredging Co., Inc. v. United States*, 375 F.3d 1106, 1110 (Fed. Cir. 2004) (stating that it is "unnecessary to seek clarification in the admittedly sparse legislative history" when the language of a statute is clear and unambiguous absent extraordinary circumstances).[8] The Claims Court felt it appropriate to go beyond the plain meaning of Section 6322(a) because it believed application of the statute's plain text would cause an "absurd result, such as allowing an employee unlimited court leave." *Hall*, 99 Fed. Cl. at 231. However, no "absurd result" stems from a plain reading of Section 6322(a). Neither the Claims Court nor the Government could cite a single state or federal court where grand jurors are permitted to serve indefinitely. *See*, *e.g.*, Fed. R. Crim. P. 6(g) (grand jury may serve more than 18 months

---

and was subsequently sworn as a juror, she did not receive anything other than a valid summons to appear in court, nor could she have been "summoned" in a manner different than that described in Section 6322(a).

    8    The dissent examines legislative history stating, "it is unclear whether this term encompasses only a compulsory summons or extends to a voluntary summons—that is, a summons that one volunteers to receive." Dissent Op. at 4-5. The term "summoned," has a well defined, specific and unambiguous meaning in the context of grand jury service. It is a legislative, not a judicial prerogative to insert modifiers such as "compulsory" or "voluntary" into Section 6322(a).

only if a court extends service, but an extension may be granted for no more than 6 months).  Indeed, Ms. Hall served on the grand jury pursuant to a California law that caps consecutive service at two years. *See* Cal. Penal Code § 901(b).

Moreover, it is not "absurd" to offer court leave to experienced grand jurors, such as Ms. Hall.  The grand jury, as well as the petit jury, serves a "vital function" in American society. *See United States v. Cotton*, 535 U.S. 625, 634 (2002); Handbook for Federal Grand Jurors at 3 (grand jury protects "citizens from unwarranted or inappropriate prosecutions").  Contrary to the Government's current argument, sitting on a grand jury is a valuable public service not a "vacation from work at taxpayer expense," Plaintiff-Appellant's Brief at 18, nor can it fairly be described as "voluntarily disregard[ing]" an employee's workplace duties, *id.* at 36.  The experience Ms. Hall gained during her first year of service could do nothing but benefit the public during her second and final term as grand jury foreman, and Congress did not intend a federal employee summoned as a juror to incur financial ruin for public service.

Thus, we hold that Section 6322(a) applies to a grand juror who voluntarily applied for grand jury service and was subsequently "summoned" to serve by a court.  Although Ms. Hall may not have acted responsibly, she served as a grand juror pursuant to a valid court summons, which under the statute entitles her to court leave.[9]

---

[9]  The dissent articulates several facts from the record, and from those facts concludes that because Ms. Hall was not coerced to join the grand jury her service does not fall within Section 6322. Dissent Op. at 2-4. There is no disagreement that Ms. Hall served as a grand juror pursuant to a valid court-issued summons, the only statutory requirement.

Therefore, we reverse the Claims Court's grant of summary judgment.

## III.

For the reasons stated above, we reverse the Claims Court's summary judgment determination with regard to Ms. Hall's pre-removal claims and remand the issue for a decision in accordance with our opinion. We affirm the Claims Court's dismissal of Ms. Hall's post-removal claims. The issue has already been decided by this court. *Hall I*, 617 F.3d at 1317 (holding that the Claims Court lacked jurisdiction over Ms. Hall's post-removal claims).

**REVERSED AND REMANDED IN PART, AND AFFIRMED IN PART**

No costs.

# United States Court of Appeals
# for the Federal Circuit

---

**DAWN HALL,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2011-5119

---

Appeal from the United States Court of Federal Claims in Case No. 09-CV-239, Senior Judge Bohdan A. Futey.

---

LOURIE, *Circuit Judge*, dissenting in part.

While I join the portion of the majority's opinion that dismisses Hall's post-removal claims, I respectfully dissent from the majority's decision to reverse the grant of summary judgment by the Court of Federal Claims. Contrary to the majority's opinion, Hall was not "terminated from her employment for voluntary grand jury service," Majority Op. at 2; she was terminated for being absent without leave ("AWOL"). Therein lies the crux of this dispute.

Just as the right to trial by jury is the cornerstone of our nation's justice system, jury service is one of the highest duties of citizenship. Jurors thus deserve our utmost commendation. Hall's insubordinate behavior, however, does not merit such praise. As the facts of this case demonstrate, Hall exploited the California jury service system as a means of shirking another important civic obligation—her duties as a federal employee.

Hall's employer, the Naval Criminal Investigative Service ("NCIS") of the Department of the Navy, informed Hall in November 2002 that her position would be transferred from California to Washington, D.C., that December. Hall notified her supervisors that for personal reasons she would be unable to report for duty. Hall's employer granted her five months of unpaid leave and requested that she report to work in Washington on July 14, 2003.

While on unpaid leave, and aware of the federal government's practice of providing paid leave to employees serving on a jury, Hall completed a questionnaire in March 2003 to be considered for grand jury service in Ventura County, California. J.A. 206. Hall testified that submitting the questionnaire was entirely voluntary. J.A. 205. ("I voluntarily submitted the questionnaire."). Despite receiving at least three e-mails from her then second-level supervisor, Claude Baldwin, regarding her upcoming move to Washington, Hall never once mentioned that she had volunteered for the grand jury pool.

On July 1, 2003, two weeks before she was scheduled to report for duty in Washington, Hall notified Baldwin via e-mail that "[s]tarting today" she would be serving a one-year term on the Ventura County Grand Jury—from July 1, 2003, through June 30, 2004. J.A. 207. Baldwin expressed to Hall his displeasure that she had accepted a

voluntary one-year term on the grand jury. Baldwin also threatened to have Hall considered AWOL.

On July 30, 2003, Louis Beyer, the Assistant Director for Administration at NCIS, wrote to the Honorable Bruce Clark, the presiding judge of the Ventura County Grand Jury, requesting that Judge Clark release Hall from grand jury service "at the earliest possible date" on account of "an extensive backlog of critical work." J.A. 251. In response, Judge Clark informed Beyer that that "Grand Jury service is completely voluntary" and that "the Court will approve any request by Mrs. Hall to resign from her duties on the Grand Jury." J.A. 252. Judge Clark noted, however, that the Court would not release Hall from Grand Jury duty "against her expressed desire to continue her service." *Id.* Judge Clark nonetheless pointed out that Hall's failure to resign from her duties on the grand jury "could be grounds for disciplinary action" by NCIS. *Id.* Despite being "continuously aware that the [NCIS] did not want me to serve on the grand jury" throughout her service, J.A. 212, Hall never requested to resign from the grand jury, J.A. 210. Hall was granted paid leave for her first year of grand jury service, even though she served contrary to the wishes of her Navy employer.

Hall not only volunteered for a year of grand jury service against the express wishes of her employer, she did so again a year later. On May 26, 2004, Joseph Vann, then the Deputy Assistant Director for the Cyber Division at NCIS and Hall's second-level supervisor, wrote to Hall directing her to report for duty in Washington no later than July 14, 2004. The letter also stated: "You are directed not to seek or accept appointment for an additional term on the Ventura County Grand Jury." J.A. 254. Despite this clear directive, Hall responded to Vann on June 28, 2004—about two weeks before she was sched-

uled to report for duty—stating that she "will be serving a final year on the Ventura County Grand Jury beginning on July 1, 2004, and ending on June 30, 2005." J.A. 261. Hall later testified that she "had the opportunity to say no" to the additional year of service, and that she "was not coerced to serve the following year." J.A. 211. Hall's letter, dated only two days before the end of her first term of grand jury duty, was the first time that she had informed anyone in her chain of command that she elected to extend her service for another year. J.A. 156.

Due to Hall's failure to report for duty on July 14, 2004, she was considered AWOL from that date forward. Hall filed an action with the Office of Personnel Management ("OPM"), which denied her claim for court leave.

The statute that grants leave for federal employees to serve as jurors, 5 U.S.C. § 6322(a)(1), provides that a federal employee is entitled to paid leave "during a period of absence with respect to which he *is summoned*, in connection with a judicial proceeding, *by a court* or authority responsible for the conduct of that proceeding, *to serve as a juror*." *Id.* (emphases added). That statutory provision should not, in my view, be stretched to cover Hall's decision to freely volunteer for grand jury service contrary to the clear directive of her federal employer.

Hall's arguments rest entirely on the fact that, after volunteering for grand jury service, she received a summons upon being selected. Despite testifying that she "was not coerced in any way to join the grand jury," J.A. 205, Hall contends that she deserves the benefit of court leave pay because she was "summoned . . . to serve" within the meaning of § 6322.

Section 6322 does not define "summoned," and it is unclear whether this term encompasses only a compulsory summons or extends to a voluntary summons—that

is, a summons that one volunteers to receive. The ordinary meaning of "summon," "[t]o command (a person) by service of a summons to appear in court," *Black's Law Dictionary* 1449 (7th ed. 1999), does not resolve the matter. Accordingly, § 6322 is ambiguous as to whether "summoned . . . to serve" applies to situations in which a federal employee freely volunteers to be summoned to serve on a jury.

When interpreting ambiguous statutory language, we consult the relevant legislative history. *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 62 (2004). Originally enacted in 1940, the court leave statute was substantively amended in 1970 to include its present language, "summoned . . . by a court . . . to serve," and to make court leave available not only to jurors but also to federal employees serving as witnesses in court. As the Court of Federal Claims held, and as Hall conceded at oral argument, "summoned . . . by a court . . . to serve" in § 6322(a) must have the same meaning as applied to subsection (a)(1), which applies to jurors, and subsection (a)(2), which applies to witnesses. *See Hall v. United States*, 99 Fed. Cl. 223, 229 (2011); Oral Arg. at 4:30, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2011-5119/all.

It is therefore relevant that in discussing the addition of the provision relating to witness leave, the committee report of the Senate Committee on the Judiciary stated that an employee who volunteers would not qualify for court leave:

> It should be emphasized that an employee would be entitled to witness leave only if he is summoned by the court or authority responsible for the conduct of the proceeding. *The employee would not be entitled to leave if he just volun-*

*teered; he must be summoned. . . .* What is intended is that the summons be an official request, invitation, or call, evidenced by an official writing.

S. Rep. No. 91-1371, at 8 (1970) (emphasis added). Similar concerns were expressed by members of the House of Representatives about employees "volunteering" to serve as a witness as "an easy way to get out of work for a few days," *Hearing Before the Subcomm. on Manpower and Civil Serv. of the Comm. on Post Office and Civil Serv. on H.R. 10247, a Bill to Amend Title 5, United States Code, to Grant Court Leave to Employees of the United States and the District of Columbia When Called as Witnesses in Certain Judicial Proceedings on Behalf of State and Local Governments*, 91st Cong. 11 (1969) (statement of Rep. David Henderson, Vice Chair, H. Comm. on Post Office and Civil Serv.), and "as a subterfuge for missing work," *id.* at 13 (statement of Rep. Richard White, Member, H. Comm. on Post Office and Civil Serv.).

In my view, the Court of Federal Claims rightly credited this persuasive evidence of Congress's intent that "summoned . . . by a court . . . to serve" should exclude those employees who freely volunteer for a grand jury pool. *Hall*, 99 Fed. Cl. at 232. Hall, in contrast, points to no legislative history in support of her theory that Congress intended for any employee who freely volunteers to serve, contrary to the plain directive of her supervisor, to qualify for the benefit of paid court leave.

The majority holds that "summoned" in the context of jurors in § 6322(a)(1) is "unambiguous" and applies "when[ever] a court issues a summons, which requires the individual by the force of law to appear before the court," Majority Op. at 10 n.7. Under the majority's view, that term must be equally unambiguous in the context of witnesses in § 6322(a)(2), for one statutory term cannot

have two distinct meanings. As noted, Hall sensibly agrees with the government that "summoned" in § 6322(a) must have the same meaning in both subsections (a)(1) and (a)(2). *See* Oral Arg. at 4:30; Br. Def.-Appellee United States, at 34–35.

If the majority's opinion is to be read—as I believe it must—that "summoned" in § 6322(a) invariably means having received any court-issued summons, then the majority's opinion necessarily abrogates those administrative decisions that interpret "summoned" flexibly to accommodate the limitations of the court leave system. *See, e.g.*, *In re Entitlement of Emp.-Defendant to Court Leave*, 62 Comp. Gen. 87 (1982) (holding that court leave under § 6322 is not available to a federal employee who is summoned to appear as a defendant in the court action concerned); *In re Pasake*, 59 Comp. Gen. 290 (1980) (holding that court leave under § 6322 is not available to a federal employee who appears in court as a plaintiff in her own action); *In re Court Leave*, B-214719, 1984 WL 46229 (Comp. Gen. June 25, 1984) (holding that court leave under § 6322 is not available to a federal employee summoned to appear in juvenile court in her capacity as the juvenile's parent as a party to the proceedings); *In re Sweeney*, B-201602, 1981 WL 24203 (Comp. Gen. Apr. 1, 1981) (applying *Pasake*, 59 Comp. Gen. 290, to deny court leave to a government employee appearing in court as a plaintiff).

Moreover, the majority's opinion precludes OPM, under § 6322(c), from enacting regulations construing "summoned" to mean anything other than applying to all summonses, without qualification. The Supreme Court has held that "a precedent holding a statute to be unambiguous forecloses a contrary agency construction." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984 (2005). Just as Hall should not receive the

benefit of paid court leave, nor should a serial litigant who frequently appears in court by her own design. The majority's opinion, however, opens the door to all such abuses of the court leave system. Under my view, on the contrary, the meaning of "summoned" is ambiguous, and OPM would not be foreclosed from prescribing reasonable regulations for administering the "summoned" provision of § 6322(a) as it applies to jurors and witnesses. *Id.* ("[A] court's prior interpretation of a statute [may] override an agency's interpretation only if the relevant court decision held the statute unambiguous."); *see also* 5 U.S.C. § 6322(c).

Moreover, although OPM's decision in Hall's case is not binding on this court, it is worth noting that, in deciding whether Hall was entitled to court leave, OPM also denied Hall's claim for court leave. *Hall*, File No. 05-0036 (Office of Pers. Mgmt. Jan. 12, 2006); J.A. 297–303. Like the Court of Federal Claims, OPM concluded that "summoned" in § 6322 was ambiguous and that the pertinent legislative history confirmed that only a compulsory summons to serve as a juror qualified an employee for court leave.

Finally, in construing a statute, it is important, as the Court of Federal Claims did, to use common sense. *See, e.g., Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940). Why would Congress have intended to enact a rule that entitles a government employee to shirk work over an extended period of time under the transparent expedient of purely elective service in furtherance of another public purpose?

I therefore conclude the Court of Federal Claims correctly denied Hall paid leave for grand jury service for which she freely volunteered against the express directive of her supervisors. Accordingly, I respectfully dissent.