NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DAWN S. HALL,**
*Petitioner,*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent.*

---

2013-3151

---

Petition for review of the Merit Systems Protection Board in No. DC0752050629-I-2.

---

Decided: March 31, 2014

---

RICHARD A. REGNIER, Law Offices of Richard A. Regnier, of Camarillo, California, argued for petitioner. With him on the brief was GEORGIANNA P. REGNIER.

SARA B. REARDEN, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, argued for respondent. With her on the brief was BRYAN G. POLISUK, General Counsel.

---

Before MOORE, O'MALLEY, and TARANTO, *Circuit Judges.*

O'MALLEY, *Circuit Judge*,

Petitioner Dawn S. Hall ("Ms. Hall") appeals a decision of the Merit System Protection Board ("MSPB" or "the Board") denying her petition for review of an Administrative Judge's order dismissing of her appeal as untimely filed. As Ms. Hall has failed to demonstrate that the MSPB abused its discretion or acted arbitrarily or capriciously in dismissing her refiled appeal, we affirm.

BACKGROUND

The Department of the Navy, Naval Air Warfare Center in Point Mugu, California, hired Ms. Hall as an Electronics Engineer in 1984. During her service with the Navy, Ms. Hall would often provide technical assistance in criminal investigations for the Naval Criminal Investigative Services ("NCIS"). In 1999, the Navy transferred Ms. Hall to NCIS as an Investigative Computer Engineer, but allowed her to remain in California. On June 5, 2002, the Navy notified Ms. Hall of its decision to transfer her position to NCIS Headquarters in Washington, D.C. in order to consolidate the functions of the Operations Analysis Center. On June 26, 2002, Ms. Hall affirmatively elected to move to Washington, and she received her permanent orders to relocate in November 2002. Due to concerns about her mother's health, however, Ms. Hall requested a delay in her transfer until July 2003, which was approved by her supervisor, Claude Baldwin.

In March 2003, Ms. Hall voluntarily submitted a Prospective Grand Jury Nominee Questionnaire for the Superior Court of California, County of Ventura. Ms. Hall received a summons from the Superior Court on June 20, 2003, and she was selected to serve as a grand juror for the next year, starting on July 1, 2003. On July 1, Ms. Hall notified Mr. Baldwin that she would not be able to report to Washington on July 14 due to her grand jury service. The Assistant Director of Administration at NCIS, Louis Beyer, wrote to presiding Judge Bruce Clark,

requesting that Ms. Hall be released from her grand jury service. Judge Clark responded that he would approve any request by Ms. Hall to resign, because grand jury service was voluntary, but that Ms. Hall had asked to remain and he would not terminate her service against her wishes. Ms. Hall remained on the grand jury and the Navy paid her full salary during the 2003-04 term pursuant to 5 U.S.C. § 6322(a) (2012). Section 6322(a) grants federal employees leave without loss or reduction of pay when "summoned, in connection with a judicial proceeding, by a court or authority…to serve as a juror."

On May 26, 2004, Deputy Assistant Director Joseph Vann, who replaced Mr. Baldwin as Ms. Hall's supervisor, wrote to Ms. Hall to inform her that she must report for duty in Washington by July 14, 2004 and that she was not to seek or accept appointment for further service on the grand jury for the 2004-05 term. Ms. Hall, however, had spoken with the current foreman of the grand jury and Judge Clark about serving as foreman of the grand jury for the 2004-05 term. Ms. Hall then informed Mr. Vann on June 28, 2004 that she would be serving a final year on the grand jury from July 1, 2004 through June 30, 2005.

The Navy placed Ms. Hall on absent without leave ("AWOL") status on July 11, 2004 and withheld her pay. In October 2004, Mr. Vann informed Ms. Hall that she had been marked as AWOL and would not receive pay as of July 14, 2004. Ms. Hall filed a complaint with the MSPB on December 4, 2004 challenging the Navy's decision to place her in AWOL status. The Administrative Judge ("AJ") dismissed this appeal for lack of jurisdiction, finding that an agency decision to place an employee in AWOL status is not appealable to the MSPB. *Hall v. Dep't of the Navy*, Initial Decision, No. DC-3443-05-0138-I-1, 2005 MSPB LEXIS 1253 (M.S.P.B. Feb. 7, 2005). Ms. Hall also filed a complaint with the Office of Special Counsel ("OSC") on December 19, 2004. The OSC determined that § 6322(a) did not mandate paid leave when

jury duty is voluntary, and the Navy did not violate the law by placing Ms. Hall in AWOL status.

The Navy sent Ms. Hall a notice of proposed removal on February 5, 2004, identifying three proposed grounds for removal: (1) failure to report for duty as directed; (2) refusal to obey a proper order from a supervisor; and (3) absence without leave. In March 2005, Ms. Hall appealed to the Office of Personnel Management ("OPM"), Office of Merit Systems Oversight and Effectiveness, seeking a determination of her entitlement to court leave. While this request to OPM remained pending, the Navy issued a final decision on June 22, 2005, which effected her removal as of June 29, 2005.

Ms. Hall then filed a second appeal with the MSPB on July 13, 2005, seeking to be restored to her current position with back pay effective to July 14, 2004. After a September 7 phone conversation with the AJ, Ms. Hall filed a motion for extension of time requesting that the AJ delay his findings until "at least 10 days after [OPM] reaches a final decision on Appellant's claim relating to court leave." Joint Appendix ("J.A.") 62. In a September 9, 2005 Initial Decision, the AJ dismissed the appeal without prejudice. *Hall v. Dep't of the Navy*, Initial Decision, No. DC-0752-05-0629-I-1, 2005 MSPB LEXIS 5828, at *2 (M.S.P.B. Sept. 9, 2005). The AJ noted that, if OPM found that Ms. Hall was entitled to court leave under § 6322(a), it may obviate "the underlying basis for the agency's charges and the appellant's resultant removal." *Id.* Importantly, the initial decision stated "the appellant may refile her appeal within 40 days after the date of receipt of a final OPM decision…*but in no event…later than December 2, 2005. Id.* (emphasis added).

On November 14, 2005, OPM contacted Anne O'Toole, the representative for the Navy assigned to Ms. Hall's appeal, and informed her that OPM "could not possibly render a decision before the December 2, 2005 deadline."

J.A. 172. Ms. O'Toole then relayed this information to Ms. Hall and the AJ in a November 15, 2005 letter. Ms. Hall did not refile her appeal with the MSPB by the December 2, 2005 deadline.

On January 12, 2006, OPM issued its opinion denying Ms. Hall's request for court leave on the grounds that "summoned" in § 6322(a) did not apply to voluntary jury service. The OPM opinion concluded with the statement that "No further administrative review is available within the OPM. Nothing in this settlement limits the claimant's right to bring an action in an appropriate United States court." J.A. 136. Again, Ms. Hall did not refile her appeal with the MSPB after receiving the OPM opinion.

PROCEDURAL HISTORY

According to Ms. Hall, after receipt of the OPM opinion, she sought counsel to handle an action in federal court, eventually retaining counsel in November 2008. Ms. Hall filed suit on April 20, 2009 in the United States Court of Federal Claims ("Court of Federal Claims') seeking: (1) back pay for the pre-removal period while she was placed in AWOL status; (2) reinstatement to her position; and (3) back pay for the period after her removal on June 29, 2005. *Hall v. United States*, 89 Fed. Cl. 102, 106 (2009). The Court of Federal Claims dismissed all of Ms. Hall's claims for lack of jurisdiction, stating that the Civil Service Reform Act required that all disputes regarding removal be brought to the MSPB and that all three of Ms. Hall's claims derived from her removal. *Id.* at 109.[1]

---

[1] The Court of Federal Claims also dismissed Ms. Hall's constitutional claims against the Navy for lack of jurisdiction. *Id.* at 109-110. Those claims are not at issue in this appeal.

Ms. Hall timely appealed to this Court, which reversed and remanded on September 1, 2010. *Hall v. United States*, 617 F.3d 1313, 1318 (Fed. Cir. 2010) ("*Hall I*"). In *Hall I*, we found that Ms. Hall's removal was a separate personnel action from her pre-removal placement in unpaid AWOL status under § 6322(a), and that her reinstatement was not a necessary precondition for her to receive pre-removal back pay. *Id.* at 1317. Thus, the Court of Federal Claims had jurisdiction over her pre-removal claims. *Id.* at 1317-18. For the claims seeking reinstatement and post-removal back pay, we held that "[o]nly the ancillary claims for reinstatement and post-removal back pay were predicated on the removal action. As to those ancillary claims, *we agree with the Court of Federal Claims that it lacked jurisdiction.*" *Id.* at 1317 (emphasis added). Ms. Hall did not refile her appeal with the MSPB once she received the *Hall I* opinion.

On remand to the Court of Federal Claims, Ms. Hall and the government each filed a motion for summary judgment on the pre-removal back pay claims, and the government moved to dismiss the removal and post-removal claims for lack of subject matter jurisdiction. *Hall v. United States*, 99 Fed. Cl. 223, 227 (2011). The Court of Federal Claims held that § 6322(a)(1) did not grant mandatory paid leave to grand jurors who applied for voluntary service on a grand jury, even when they received a summons to appear, and dismissed the pre-removal claims on that basis *Id.* at 231-33. The court also granted the government's motion to dismiss the removal and post-removal claims in light of *Hall I*, stating that the Federal Circuit made clear that the removal and court leave questions are not "inextricably intertwined" and that jurisdiction for removal was exclusive to the MSPB. *Id.* at 234 (quoting *Hall I*, 617 F.3d at 1316).

Hall timely appealed to our court. *Hall v. United States*, 677 F.3d 1340 (Fed. Cir. 2012) ("*Hall II*"). On April 30, 2012, we reversed the Court of Federal Claims

on the pre-removal back pay claims, stating that § 6322(a) "applies to a grand juror who voluntarily applied for grand jury service and was subsequently 'summoned' to serve by a court." *Id.* at 1347. For the post-removal claims, the panel affirmed the Court of Federal Claims dismissal, stating that "[t]he issue has already been decided by this court" in *Hall I*. *Id.*

On May 24, 2012, within 30 days of *Hall II*, Ms. Hall refiled her removal appeal with the MSPB. On June 1, 2012, the AJ issued an Order to Show Cause why Ms. Hall's appeal should not be dismissed as untimely. The AJ dismissed the appeal as untimely filed on August 17, 2012. *Hall v. Dep't of the Navy*, Initial Decision, No. DC-0752-05-0629-I-2, 2012 MSPB LEXIS 4746, at *10-11 (M.S.P.B. Aug. 17, 2012). In particular, the AJ concluded that his "specific, clearly-worded instructions" required Ms. Hall to refile the appeal no later than December 2, 2005. *Id.* at *3. The AJ also found that Ms. Hall failed to demonstrate good cause for the untimely appeal under the factors enumerated in *Neal v. Department of the Air Force*, 68 M.S.P.R. 26 (1995). Ms. Hall filed a petition for review with the MSPB, asking the Board to reconsider the AJ's initial decision. The MSPB affirmed the dismissal in a final order issued on May 24, 2013. *Hall v. Dep't of the Navy*, Final Order, No. DC-0752-05-0629-I-2, 2013 MSPB LEXIS 2803, at *8-10 (M.S.P.B. May 24, 2013). Ms. Hall filed a timely Notice of Appeal, and we have jurisdiction over the present appeal pursuant to 5 U.S.C. § 7703(b)(1)(A) and 28 U.S.C. § 1295(a)(9).

ANALYSIS

We review MSPB decisions under the standards established by 5 U.S.C. § 7703. *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 6-7 (2001). We set aside MSPB's actions, findings, or conclusions if they are:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence . . . .

5 U.S.C § 7703(c). Arbitrary and capricious review is "extremely narrow." *Gregory*, 534 U.S. at 6-7. Under this standard, the MSPB receives "wide latitude" and "[i]t is not for the Federal Circuit to substitute its own judgment for that of the Board." *Id.* at 7.

The issue before this court on appeal is whether the MSPB abused its discretion, or acted in an arbitrary or capricious manner, in (1) dismissing Ms. Hall's appeal as untimely due to the more than six-year delay between December 2, 2005, when the AJ required Ms. Hall to refile her appeal with the MSPB, and May 24, 2012, when Ms. Hall actually refiled her appeal, and (2) refusing to reopen Ms. Hall's appeal in light of our decision in *Hall II*. Under 5 C.F.R. § 1201.22(c) (2013), the MSPB will dismiss appeals not submitted "within the time set by statute, regulation, or order of a judge" as untimely "unless a good reason for the delay is shown."

To establish good cause for an untimely appeal, the petitioner must show that he or she "exercised due diligence and ordinary prudence in the circumstances of her case." *Walls v. Merit Sys. Protection Bd.*, 29 F.3d 1578, 1582 (Fed. Cir. 1994). We have held that an agency determination of whether a regulatory time limit for appeal should be waived for good cause "is a matter committed to the Board's discretion." *Id.* at 1582; *see also Mendoza v. Merit Sys. Protection Bd.*, 966 F.2d 650, 653 (Fed. Cir. 1992) (en banc).

The Board analyzed the factors identified in *Nelson v. U.S. Postal Service*, 113 M.S.P.R. 644, ¶ 8 (2010), *aff'd sub nom. Nelson v. Merit System Protection Board*, 414 F.

App'x 292, 293 (Fed. Cir. 2011), to determine if Ms. Hall demonstrated good cause.[2] These factors include:

> the appellant's pro se status; the timeliness of the initial appeal; the appellant's demonstrated intent throughout the proceedings to refile the appeal; the length of the delay in refiling; confusion surrounding and arbitrariness of the refiling deadline; the number of prior dismissals without prejudice; the agency's failure to object to the dismissal without prejudice; and the lack of prejudice to the agency in allowing the refiled appeal.

*Id.* Only if the appellant has met his or her initial burden of demonstrating that there was good cause for the untimely filing must the agency submit evidence that it would be prejudiced by having to proceed with the un-

---

[2] In *Walls*, we applied the Board's recitation of the following factors for determining if the petitioner has demonstrated good cause for delay:

> the length of the delay; whether appellant was notified of the time limit or was otherwise aware of it; the existence of circumstances beyond the control of the appellant which affected his ability to comply with the time limits; the degree to which negligence by the appellant has been shown to be present or absent; circumstances which show that any neglect involved is excusable neglect; a showing of unavoidable casualty or misfortune; and the extent and nature of the prejudice to the agency which would result from waiver of the time limit.

*Walls*, 29 F.3d at 1582 (quoting *Alonzo v. Dep't of the Air Force,* 4 M.S.P.R. 180, 184 (1980)). The parties rely upon and discuss only the *Nelson* factors used by the Board. Because those factors appear consistent with the *Alonzo* factors we quoted in *Walls*, we also refer to *Nelson* in our analysis.

timely appeal. *Womack v. Merit Sys. Protection Bd.*, 798 F.2d 453, 456 (Fed. Cir. 1986).

The MSPB has broad discretion in deciding whether to reopen a final decision on the basis of new and material evidence. 5 C.F.R. § 1201.118. The Board will only reopen an appeal "in unusual or extraordinary circumstances and generally within a short period of time after the decision becomes final." *Id.* The Board has interpreted "short period of time" to be limited to "weeks, not months or years." *Arenal v. Office of Pers. Mgmt.*, 106 M.S.P.R. 272, ¶ 10 (2007), *aff'd*, 264 F. App'x. 891 (Fed. Cir. 2008); *Bagunas v. U.S. Postal Serv.*, 100 M.S.P.R. 328, ¶ 5 (2005). Reopening an appeal is appropriate if there is "clear and material legal error, and a conflict between the holding of the decision and a controlling precedent or statute." *Bagunas*, 100 M.S.P.R. at ¶ 5. The Board is also authorized to reopen an appeal if the appellant establishes that "[n]ew and material evidence is available that, despite due diligence, was not available when the record closed." *Brenneman v. Office of Pers. Mgmt.*, 439 F.3d 1325, 1328 (Fed. Cir. 2006). The Supreme Court has deferred to an agency's interpretations of its own regulations where not "plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).

Ms. Hall argues, in part, that the Board abused its discretion in not finding good cause due to: (1) the language used in the AJ's September 9, 2005 opinion; (2) confusion over the continuing applicability of the AJ's December 2, 2005 deadline after OPM's statement that it could not meet the deadline; (3) the language used in the January 12, 2006 OPM opinion; and (4) the agency's failure to recognize both Ms. Hall's diligence in prosecuting her claims and the extraordinary circumstances of this case. The government responds that Ms. Hall failed to demonstrate good cause because there was no burden on the AJ to proactively monitor the process of OPM

decision making, and because any delay caused by Ms. Hall's need to obtain counsel and prosecute the parallel district court proceedings does not rise to the level of good cause.

In its 2012 Final Order, the Board reviewed the timeliness of Ms. Hall's refiling under the factors described in *Nelson*. The Board did not find sufficient evidence of good cause, despite Ms. Hall's status as a pro se petitioner at the time of her initial appeal and the agency's failure to object to a dismissal without prejudice of that appeal. The Board concluded that the September 9, 2005 opinion clearly established the deadline for refiling and did not condition that deadline on any activity, or lack thereof, on the part of OPM. The Board found that, if Ms. Hall had any questions about the December 2 deadline or how the OPM decision would affect her appeal in the MSPB, she could have contacted either agency for clarification. The Board also found that the greater-than-six-year delay in refiling was significant, as the Board will usually only waive a deadline in cases with a much shorter delay. Finally, the Board concluded that, "while the circumstances presented here are somewhat unusual," the period of delay and the interests of finality weighed against reopening the original 2004 appeal. *Hall v. Dep't of the Navy*, Final Order, No. DC-0752-05-0629-I-2, 2013 MSPB LEXIS 2803, at *10 (M.S.P.B. May 24, 2013).

Without addressing Ms. Hall's arguments specifically as they relate to the original December 2, 2005 deadline, we find that the MSPB did not abuse its discretion in affirming dismissal of her appeal in the circumstances at issue here. We also find that the Board acted within its discretion when it refused to reopen the appeal.

Ms. Hall argues that her untimely filing as of the December 2, 2005 deadline is excused by good cause, and that the 2004 appeal should have been reopened on the basis of our decision in *Hall II*. As to good cause, Ms. Hall

asserts that, because she diligently pursued her case before all forums to which she was directed—first by the AJ and then OPM—and was legitimately confused by those directions, her late filing should be forgiven. On the question of whether her appeal should have been reopened, Ms. Hall contends that, until *Hall* II was decided, the predicate for her removal and post-removal claims was not established; on this ground, she contends that *Hall II* constituted new evidence. Ms. Hall has the burden to demonstrate good cause for her late filing. *Womack*, 798 F.2d at 456.

We conclude that we need not decide whether Ms. Hall was bound by the December 2, 2005 deadline set by the AJ or whether the obligation to appeal to the Board was reactivated by the January 12, 2006 OPM decision. We find that, even if there was good cause for some period of delay, Ms. Hall's May 24, 2012 appeal was not excused by good cause by no later than October 1, 2010, thirty days after we issued our decision in *Hall I*.

In *Hall I*, we held that the Court of Federal Claims lacked jurisdiction over Ms. Hall's claims for reinstatement and post-removal back pay, and that only the MSPB could consider those claims. *Hall I*, 617 F.3d at 1317. Thus, as of September 1, 2010, Ms. Hall was on notice that she would have to seek redress for her reinstatement and post-removal back pay claims exclusively through the MSPB. It is undisputed that Ms. Hall's May 24, 2012 filing came well more than thirty days after *Hall I* issued.

We do not find that the MSPB abused its discretion in holding that Ms. Hall failed to demonstrate good cause for this delay. While Ms. Hall presented some evidence potentially demonstrating good cause in regards to the December 2, 2005 deadline under the *Nelson* factors, she has presented no evidence demonstrating good cause for her delay from October 2010 forward. Though Ms. Hall was a pro se petitioner at the time of her actions before

the MSPB and OPM in 2005 and 2006, respectively, she retained counsel for her appearances before the Court of Federal Claims in 2009. Despite clear statements from both this Court and the Court of Federal Claims regarding the proper forum for her removal and post-removal claims, Ms. Hall failed to file an appeal with the MSPB until 21 months later. And, neither Ms. Hall nor her counsel attempted to contact the AJ or the MSPB once we issued *Hall I* to determine the most appropriate course of action for her removal and post-removal claims.

While it is possible that Ms. Hall was confused by the MSPB and OPM decisions in 2005 and 2006, *Hall I* clarified her options. Ms. Hall did pursue her claims diligently before OPM, the Court of Federal Claims, and this Court, but she did not timely demonstrate an intent to refile her appeal with the MSPB regarding her removal and post-removal claims. The Board may not have identified any real evidence of prejudice from the delay, but the agency did not have the burden of submitting evidence of prejudice in the absence of a showing of good cause by Ms. Hall. Thus, we find that the Board did not abuse its discretion in finding that Ms. Hall failed to establish good cause for her delay.

We also conclude that the Board did not abuse its discretion in failing to reopen Ms. Hall's appeal. Ms. Hall argues that *Hall II* represented "new evidence" that justifies reopening her appeal. As we made clear in *Hall II*, however, the only claim properly before us in that appeal was Ms. Hall's pre-removal back pay claim; we had "already decided the Claims Court's [absence of] jurisdiction with regard to Ms. Hall's post-removal claims." *Hall II*, 677 F.3d at 1341. While *Hall II* may have provided further legal support for any timely-filed post-removal claims with the Board, Ms. Hall cannot justify her failure to diligently pursue those claims or her failure to seek the same legal conclusions with respect to those claims from the Board or this Court.

Our decision is not a retreat from the statements we made in *Hall II* regarding the importance of jury service. *See, e.g.*, *Hall II*, 677 F.3d at 1346 (majority) ("The grand jury, as well as the petit jury, serves a 'vital function' in American society." (internal citations omitted)); *Id.* at 1347 (dissent-in-part) ("Just as the right to trial by jury is the cornerstone of our nation's justice system, jury service is one of the highest duties of citizenship."). The holding in this appeal rests on procedural matters left to the discretion of an administrative body; not on any judgment regarding the importance of grand jury service.

The Supreme Court has often recognized the importance of jury service, and grand jury service in particular. *See, e.g.*, *Powers v. Ohio*, 499 U.S. 400, 406 (1991); *Branzburg v. Hayes*, 408 U.S. 665, 690 (1972) ("Fair and effective law enforcement aimed at providing security for the person and property of the individual is a fundamental function of government, and the grand jury plays an important, constitutionally mandated role in this process."). Jury service "affords ordinary citizens a valuable opportunity to participate in the process of government, an experience fostering, one hopes, a respect for law." *Duncan v. Louisiana*, 391 U.S. 145, 187 (1968) (Harlan, J., dissenting). Jury service plays an important role in both educating jurors on our justice system, and "guard[ing] against arbitrary abuses of power by interposing the commonsense judgment of the community between the State and the defendant." *Teague v. Lane*, 489 U.S. 288, 314 (1989). As the *Hall II* majority noted, Ms. Hall performed a "valuable public service" during her time spent as a grand juror, *Hall II*, 677 F.3d at 1347; nothing contained in this opinion should be read to detract from the importance of voluntary jury service, or of the need for government agencies to accommodate it.

CONCLUSION

Given the extensive delay in Ms. Hall's refiling of her MSPB appeal and the lack of evidence of good cause to justify that delay, we affirm the decision of the MSPB to dismiss the refiling of her appeal as untimely, and to otherwise refuse to reopen her appeal.

**AFFIRMED**