**Walter Ray GRAVES and Lisa Graves as Representatives of the Estate of Hayley Nicole Graves, deceased, Petitioners,**

v.

**SECRETARY OF THE DEPT. OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 02–1211 V

United States Court of Federal Claims.

(Filed February 25, 2013)

---

Richard Gage, Cheyenne, WY, for petitioners.

Lisa A. Watts, Torts Branch, Civil Division, United States Department of Justice, Washington DC, for respondent. With her on the briefs were Stuart F. Delery, Acting Assistant Attorney General, Rupa Bhattacharyya, Director, Vincent J. Matanoski, Deputy Director and Catherine E. Reeves, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, DC.

Merow, Senior Judge.

Vaccine Act; application of statutory cap on pain, suffering and emotional distress in death case; 42 U.S.C. § 300aa–15(a)(4); *Youngblood v. Sec'y of HHS*, 32 F.3d 552 (Fed.Cir.1994).

## OPINION AND ORDER

For the death of their infant daughter Hayley Nicole Graves (Hayley), Walter and Lisa Graves, as representatives of Hayley's Estate (petitioners), seek compensation under the National Childhood Vaccine Injury Act of 1986 (the Vaccine Act), 42 U.S.C. §§ 300aa–1 to 300aa–34 (2006). Hayley began having seizures two days after her Prevnar [1] vaccination on August 8, 2000. Upon presentation to the emergency room, she was hospitalized immediately and continually thereafter for forty-five days, primarily in pediatric intensive care. Despite a battery of tests, invasive procedures, treatment and examination by specialists, Hayley's seizures were unremitting and she died on September 24, 2000. Her death certificate documents her immediate cause of death as "status epilepticus [repeated seizures]" and the underlying cause as "intractable [uncontrollable] seizures." (Pet. for Vaccine Compensation, filed Sept. 16, 2002, Dkt. 1, Ex. 4 (parentheticals added).)

After protracted proceedings, including two opinions from the undersigned, petitioners' entitlement to compensation under the Vaccine Act has been determined. Accordingly, there is concurrence that petitioners are entitled to the $250,000 death benefit provided by 42 U.S.C. § 300aa–15(a)(2) and unreimbursed expenditures of $5,171.50 pursuant to 42 U.S.C. § 300aa–15(a)(1)(A). Remaining in controversy is the sufficiency of the special master's $60,000 award for Hay-

---

1. Prevnar is a brand name of a pneumococcal conjugate vaccine covered under the Vaccine Injury Table. 42 C.F.R. § 100.3(a). Prevnar was licensed by the Food and Drug Administration (FDA) on February 17, 2000.

ley's pain and suffering and emotional distress, which by statute may not exceed $250,000. 42 U.S.C. § 300aa–15(a)(4). Applying the "policy" of the Office of the Special Masters limiting awards approaching or at $250,000 to suffering at the most extreme in intensity, duration and cognizance of all vaccine-injured petitioners, the special master assessed Hayley's ordeal solely from the medical records (no witnesses were called) on a global continuum with $250,000 as the ceiling, and placed Hayley's suffering at the $60,000 level on that scale. Petitioners contend that the special master erred in relying on this policy, which counters the clear meaning of the statute and precedent, and request the undersigned conclude that compensation for Hayley's suffering is in excess of $250,000 and apply the statutory cap. Respondent did not take a position on the amount of damages for Hayley's pain and suffering and emotional distress either before the special master or the undersigned, other than to insist that the special master's award of $60,000 was neither an abuse of discretion nor in violation of the statute.

For the following reasons, the court concludes the policy applied by the special master in this case was not consistent with the statute or precedent, and upon review of the record, awards $250,000 for Hayley's pain and suffering and emotional distress.

### Background

The special master initially denied compensation, concluding that petitioners did not establish by preponderant evidence that the Prevnar vaccine administered to Hayley on August 8, 2000, caused the onset of seizures that caused her death on September 24, 2000, at the age of ten months and twenty days. *Graves v. Sec'y of HHS*, 2008 WL 4763730 (Fed.Cl.Spec.Mstr. Oct. 14, 2008) (*Graves I* ).

Petitioners timely filed a Motion for Review on November 13, 2008. (ECF No. 93.) Following the filing of a Response on Decem-

ber 12, 2008 (ECF No. 95), and oral argument on February 10, 2009, after review of Hayley's medical records and expert reports, by Remand Order dated April 9, 2009 (ECF No. 101), the undersigned deferred resolution of the errors claimed, remanding to the special master for a supplemental decision, because while disagreeing on whether Prevnar may have caused Hayley's seizures, it appeared that the experts concurred that Prevnar could cause seizures to increase in duration. Hayley died because her seizures were intractable—uncontrolled—raising an issue of significant aggravation, a separate basis for compensation under the Vaccine Act.[2] The impact of Prevnar on the duration of seizures was neither addressed nor resolved by the special master in *Graves I*.

Putting aside the issue whether the administration of Prevnar vaccine can cause the onset of seizures, the record evidence raises a question whether the IL–1 beta [interleukin–1ß] in Hayley's system, stemming from the vaccine administration, served to "pre-prime" her system so as to render subsequent seizures (however caused), occurring within a reasonable time period, intractable or of sufficient duration to comprise a substantial causal factor for her death. The special master's decision does not address this question.

Order, 2009 WL 989772, at *1 (Fed.Cl. Apr. 9, 2009). Subsequently, remand was expanded to include consideration of the then-recent opinion in *Andreu v. Secretary of Health and Human Services*, 569 F.3d 1367 (Fed.Cir. 2009). (Order, ECF No. 109, 2009 WL 1856461, at *1 (Fed.Cl. June 26, 2009).)

Both parties filed supplemental expert reports and additional medical articles. On September 21, 2010, the special master issued a Published Remand Decision Denying Entitlement. *Graves v. Sec'y of HHS*, 2010 WL 5830501 (Fed.Cl.Spec.Mstr. Sept. 21, 2010) (*Graves II* ). Responding to the sup-

---

2. A petitioner is entitled to compensation if that person "sustained, or had significantly aggravated, any illness, disability, injury, or condition not set forth in the Vaccine Injury Table but which was caused by a vaccine referred to in" the Vaccine Injury Table. 42 U.S.C. § 300aa–11(c)(1)(C)(ii)(I). Significant aggravation is defined as "any change for the worse in a preexist-

ing condition which results in markedly greater disability, pain, or illness accompanied by substantial deterioration of health." 42 U.S.C. § 300aa–33(4); *see W.C. v. Sec'y of HHS*, 704 F.3d 1352, 1357 (Fed.Cir.2013) (citing *Loving v. Sec'y of HHS*, 86 Fed.Cl. 135, 144 (2009) (articulating standards for significant aggravation)).

plemental inquiries posed, the special master answered that the intractable nature of Hayley's seizures and/or their duration comprised a substantial causal factor in her death. However, the special master concluded that petitioners failed to provide preponderant evidence that the Prevnar vaccine induced the production of an amount of IL–1ß that could have lengthened Hayley's seizures. *Id.* at *9–10. Specifically, the special master questioned the reliability of the experimental evidence cited by petitioners' experts to connect the Prevnar vaccine and the extension of the duration of seizures. It was asserted that the evidence confirming extension of seizures involved doses of IL–1ß far exceeding the IL–1ß in Hayley's system. *Id.* at *7–9. Finally, the special master concluded that the Federal Circuit's decision in *Andreu* did not alter his findings and conclusions in *Graves I*. *Id.* at *10–12.

On review of the special master's decision, supplemental memoranda and additional briefs were filed. The court again carefully reviewed the extensive medical records, as well as the expert medical testimony and research studies presented, together with the supplemental filings, and concluded that the special master erred in denying compensation by erroneously discrediting medical research underlying the opinion of one of petitioners' experts, Dr. Vera Byers, that Prevnar can and did increase the duration of Hayley's seizures. The court further determined that the special master erred in his initial decision by: (1) focusing on whether Hayley had a fever or other adverse reaction prior to the onset of seizures; (2) failing to give appropriate weight to the testimony and opinion of Dr. James Wheless, Hayley's treating pediatric neurologist; and (3) discounting medical studies upon which petitioners' experts relied. The court entered its own findings and reversed the denials of compensation in *Graves I and GravesII* and remanded to the special master for a determination of damages.

After unsuccessful settlement negotiations, the special master scheduled summary judgment briefing on whether compensation under the Vaccine Act includes damages for pain and suffering and emotional distress, in addition to the $250,000 death benefit. (Order, ECF No. 158.) Petitioners' subsequent Motion for Summary Judgment asserted entitlement "to both a death benefit award in accordance with 42 U.S.C. § 300aa–15(a)(2) and a pain-and-suffering award in accordance with 42 U.S.C. § 300aa–15(a)(4)," citing, *inter alia, Zatuchni v. Secretary of Health and Human Services,* 516 F.3d 1312, 1318 (Fed. Cir.2008). (Pet'rs' Mot. Summ. J. Pain and Suffering Award, ECF No. 159.)

Respondent's Opposition contended that compensation was limited to the $250,000 statutory death benefit and that *Zatuchni,* which confirmed recovery of both, was distinguishable because in that case the death occurred after the petition was filed, while in the present case Hayley died before the filing. (Resp't's Opp'n Pet'rs' Mot. Summ. J. Pain and Suffering Award 2, ECF No. 162.) However, respondent stated that if its contention was rejected, and it was determined that petitioners could recover both the statutory death benefit and compensation for pain and suffering and emotional distress, it "respectfully declines to take a position on the amount of such an award." (*Id.* at 2 n.2.)

Applying *Zatuchni,* the special master granted petitioners' Motion for Summary Judgment, ruling that recovery of the fixed $250,000 statutory death benefit as well as compensation for pain and suffering and emotional distress (subject to the $250,000 statutory cap) was available.

Here, *Zatuchni* controls. The Federal Circuit examined § 15(a) thoroughly, and permitted an estate to recover more than just the $250,000 death benefit. The Federal Circuit allowed the estate to receive compensation for the injuries that Ms. Snyder endured. The same result follows here. The Graveses, as legal representatives of the estate of their deceased daughter Hayley, are entitled to the $250,000 death award, as governed by § 300aa–15(a)(2), as well as compensation for Hayley's pain and suffering, provided for by § 300aa–15(a)(4).

*Graves v. Sec'y of HHS,* 2012 WL 3106755 (Fed.Cl.Spec.Mstr. Jan. 27, 2012).

The special master commendably urged the parties to resolve the amount of pain and

suffering and emotional distress compensation as is the norm in the vast majority of vaccine cases, an effort which unfortunately was not successful. In an order of the special master following a status conference, petitioners' waiver of an evidentiary hearing on the amount of pain and suffering and emotional distress compensation (which had been scheduled in Fort Worth, Texas) was noted. Their request to brief the issue on the existing record was granted, and "[r]espondent reported that she will not file a brief on this issue." (Order 1, ECF No. 163.)

Petitioners subsequently filed a Pain and Suffering and Emotional Distress Memorandum (ECF No. 167), which included a chronological time-line summary of medical records of Hayley's almost seven weeks of unrelenting seizures and many of the medications, painful procedures and treatment she endured in pediatric intensive care units in two different hospitals, as well as observations concerning pain and suffering and emotional distress documented in those records. Citing *Youngblood v. Secretary of the Department of Health and Human Services*, 32 F.3d 552 (Fed.Cir.1994), petitioners advocated an award at the $250,000 statutory cap of 42 U.S.C. § 300aa–15(a)(4).

Thereafter, the special master reiterated respondent's reticence to taking a position on the amount of an award, but afforded yet another opportunity. "Although the Secretary previously 'decline[d] to take a position on the amount of such an award,' Resp't Opp'n, filed Dec. 21, 2011, at 2 n.2, the Secretary made this decision before reviewing petitioners' memorandum. To provide each party an opportunity to be heard (*see* Vaccine Rule (3)(b)(2)), the Secretary may file a brief in response by **March 9, 2012**." (Order 1, ECF No. 168 (emphasis in original).) Respondent did not file.

The special master then awarded $60,000 in a Published Ruling Regarding Pain and Suffering. *Graves v. Sec'y of HHS*, 2012 WL 1611578 (Fed.Cl.Spec.Mstr. Apr. 17, 2012). That Ruling recited that respondent did not take a position on the amount of compensation, despite two orders granting opportunities to do so. Also noting that neither party advocated a particular methodology for quantifying emotional distress damages, the special master reviewed the medical treatment notes and documents in the record, including records from Dr. Melanie Harston, Hayley's pediatrician, as well as from Cook Children's Medical Center and Hermann Hospital. He concluded that Hayley's well-being declined throughout her final forty-five days and she never recovered from her seizures, but "her course was not a straight decline," citing to notes in her medical records that she could open and close her eyes, had periods of less intense seizures and more alertness, and played with a toy.[3] *Id.* at *3 (citing Pet. Vaccine Comp., Ex. 9 at 68, 71; Ex. 10 at 56, 92 & 98).[4]

The special master applied a policy to utilize a continuum of damages from zero to a $250,000 ceiling, with the ceiling reserved for pain and suffering and emotional distress extreme in intensity, duration and cognizance.

I emphasize that this decision takes place in the Vaccine Program in which, **by statute, awards for emotional distress are capped at $250,000, and in which, by policy, the highest awards are reserved for cases in which the suffering is extreme both in intensity and in duration.** While there is no yardstick to measure suffering, the duration can be quantified and compared to the duration in other cases. The length of Hayley's suffering is much less than the pain that some people are forced to endure for decades. Consequently, Hayley's estate does not qualify for an award at the highest amount as the Graveses have requested.

---

**3.** The record documents that two days after this noted play, Hayley became comatose and did not respond to pain. (Dkt. 17, Medical Records, Ex. 10 at 102, 105 & 112.) She died two days thereafter. During this time, medications included narcotic pain killers to help her sleep and to try to control pain. Respondent's observation that the medical record references to reduced level of seizures and playing were "not wrong," does not alter the court's conclusions herein.

**4.** Exhibits 9 and 10, medical records, were filed on March 17, 2003. (Dkt.9.)

*Id.* at \*3 (emphasis supplied) (awarding $60,000).

Petitioners filed a Memorandum of Objections (ECF No. 171) claiming this special master-created policy was inconsistent with the direction of Congress to award $250,000 in pain and suffering and emotional distress in any case where compensation would equal or exceed $250,000.

Respondent's Memorandum in Response (ECF No. 174 at 9) contended petitioners' request for review was premature because the special master's Published Ruling was not final, but was a determination of one of several components of compensation to be awarded in a final damages decision.

The undersigned granted petitioners an opportunity to voluntarily dismiss or request a stay of proceedings relative to their objections. (Order 2, ECF No. 175.) Petitioners' subsequent Motion for Stay (ECF No. 176) was granted. (ECF No. 177.)

Thereafter, the special master's August 3, 2012 Published Remand Decision Awarding Compensation granted petitioners a total of $315,171.50, consisting of the $250,000 statutory death benefit, unreimbursed expenses of $5,171.50 and $60,000 for Hayley's emotional distress.[5] (ECF No. 181.)

Petitioners filed a Renewed Motion for Review which incorporated their previous arguments concerning this policy. (ECF No. 182.) Respondent's Memorandum in Response (ECF No. 184) asserted that the special master's determination of the amount of compensation for Hayley's pain and suffering and emotional distress is a discretionary function, to be set aside only if arbitrary, capricious, or an abuse of discretion.[6] Repeated was "respondent declined to brief the

'appropriate' amount of any pain and suffering award granted by the special master." (*Id.* at 3.)

After granting petitioners' request for oral argument (ECF No. 186), and upon analysis of the memoranda, the undersigned invited supplemental briefing.

First, discussion of analogous, if any, state or federal statutory caps or limitations on the amount of pain and suffering and emotional distress damages, and any authority construing such caps or limitations, would be helpful.

Secondly, if the court were to conclude error in the application of the statutory limit or cap provided by 42 U.S.C. § 300aa–15(a)(2), and/or any policy in this regard, in addition to the record referenced in Petitioners' Pain and Suffering and Emotional Distress Memorandum, filed on February 13, 2012 (ECF No. 167), and the comparison to facts in two other vaccine cases,[7] what record evidence supports any specific compensation amount(s) for pain and suffering and emotional distress? Is any non-vaccine authority assertedly analogous? *See generally Benoit v. United States*, No. 98–858X, 2000 WL 1134472, at \*8–9 (Fed.Cl. July 28, 2000), adopted, 2001 WL 567737 (Fed.Cl. May 23, 2001).

It is noted that respondent waived any factual argument as to the amount of pain and suffering and emotional distress damages to be awarded in this case.

On February 13, 2012, petitioners filed a memorandum on the amount of damages for pain and suffering. Although the Secretary previously "decline[d] to take a position on the amount of such an

---

5. The Published Remand Decision noted that respondent could seek review of the special master's grant of petitioners' Motion for Summary Judgment on entitlement to both the statutory death benefit, and an award for pain and suffering and emotional distress. (*Id.* at 3 n.2.) No review was sought.

6. While disagreeing with the special master's legal conclusion on recovery of both a death benefit and compensation for pain and suffering and emotional distress, respondent "has elected not to pursue a cross-motion for review of that issue before this Court." (ECF No. 184 at 3 n.3.)

7. Petitioners cited *Brown v. Secretary of Department of Health and Human Services*, No. 00–182V, 2005 WL 2659073 (Fed.Cl.Spec.Mstr. Sept. 21, 2005) (awarding $200,000 in past pain and suffering assertedly not as severe as that Hayley endured) and *Ancheta–DeMello v. Secretary of Department of Health and Human Services*, No. 07–580V (Fed.Cl.Spec.Mstr. July 14, 2011) (unpublished) (same with settlement of $175,000 for past pain and suffering and emotional distress).

award," Resp't Opp'n, filed Dec. 21, 2011, at 2 n. 2, the Secretary was given a second opportunity to file a brief. The Secretary did not, leaving only the Graveses' memorandum.

*Graves v. Sec'y of Health & Human Servs.*, No. 02–1211V, 2012 WL 1611578, at *1 (Fed.Cl.Spec.Mstr. Apr. 17, 2012). Does this waiver impact any burden of proof in this regard?

(Order 1–2, ECF No. 187 (footnote supplied).)

Supplemental memoranda were filed (ECF Nos. 188 & 189) and oral argument was held. For the following reasons, the court concludes that the policy the special master applied in this case was not consistent with statute or precedent.

### Standard of Review

■ A special master's findings of fact or conclusions of law may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa–12(e)(2)(B). *See W.C. v. Sec'y of HHS,* 704 F.3d 1352, 1355 (Fed.Cir. 2013); *Hibbard v. Sec'y of HHS,* 698 F.3d 1355, 1363 (Fed.Cir.2012) (citing *Munn v. Sec'y of HHS,* 970 F.2d 863, 869 (Fed.Cir. 1992)); *Griglock v. Sec'y of HHS,* 687 F.3d 1371, 1374 (Fed.Cir.2012) (citing *Broekelschen v. Sec'y of HHS,* 618 F.3d 1339, 1345 (Fed.Cir.2010)). Interpretation of the parameters of compensation under the Vaccine Act is a matter of statutory construction reviewed *de novo. Martin v. Sec'y of HHS,* 62 F.3d 1403, 1405 n.2 (Fed.Cir.1995) (rejecting claim that special master's determination of legal issues bound the Court of Federal Claims which was "free to revisit the matter"). *See also Heinzelman v. Sec'y of HHS,* 681 F.3d 1374, 1376 (Fed.Cir.2012) (affirming determination that compensation under the Vaccine Act should not be reduced by Social Security disability benefits) (citing *Aull v. Sec'y of HHS,* 462 F.3d 1338, 1342 (Fed.Cir. 2006)); *Youngblood,* 32 F.3d at 554 (applying *de novo* review to application of $250,000 cap of 42 U.S.C. § 300aa–15(a)(4) and present

value discount provision of 42 U.S.C. § 300aa–15(f)(4)(A) for future damages).

### The policy is inconsistent with statute and precedent

■ Petitioners' entitlement to the $250,000 statutory death benefit is not disputed. Disagreement concerns the methodology used to calculate the award for Hayley's pain and suffering and emotional distress. In this regard, the Vaccine Act provides: [8]

> (2) In the event of a vaccine-related death, an award of $250,000 for the estate of the deceased.
>
> . . .
>
> (4) For actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000.

42 U.S.C. § 300aa–15(a)(2) & (4).

### The position of the parties

Petitioners admit that under the statute an award for pain and suffering and emotional distress may not exceed $250,000, but contend that the application of the special master's policy of $250,000 as the maximum on a global comparative continuum rather than a cap on damages in excess of that cap, is inconsistent with the statute and precedent.

> Special [M]aster Moran seems to be saying that, as a matter of law, you must then compare [a petitioner with $400,000 in assessed damages for past pain and suffering and emotional distress] against some unknown other person['s] pain and suffering and emotional distress damages and if the other person suffered $1,000,000 in this category of damage that the person with $400,000 in damages only gets $100,000. Or, perhaps $60,000. Then, one can only suppose, that the person with $1,000,000 in past pain and suffering and past emotional distress would have his damages compared to someone with $2,000,000 in pain and suffering and emotional distress damages. By doing this comparison, presumably, the second petitioner would then only get

8. Compensation under the Vaccine Injury Program comes from a surcharge on vaccines paid by the manufacturers.

$100,000, or less, instead of the statutory maximum. However, how does any of this square with the plain language of the statute? One cannot possibly read such an intent by Congress into the plain language of subsection 15(a)(4).

(Mem. of Objections, ECF No. 171 at 13–14.)

Petitioners do not assert that $250,000 should be awarded in all past pain and suffering and emotional distress cases, rather a compensatory sum is determined and then, if it exceeds $250,000, the cap is applied, limiting the award to $250,000.[9]

Petitioners' Supplemental Memorandum (ECF No. 189–1) noted a dearth of non-vaccine cases that employed or considered a statutory cap as a "starting point" (*id.* at 2), or perhaps more precisely, an ending point; instead, the cap is applied if the jury or the court awarded damages in excess of that cap, which is consistent with the Federal Circuit's interpretation of the statutory cap in *Youngblood* discussed *infra*.

At oral argument counsel for petitioners stated that he found only two cases in the Vaccine Program that awarded $250,000 for pain and suffering and emotional distress, and suggested that Congress would be shocked at that statistic. Advocating rectification of the special master's legal error and objecting strongly to yet another remand, counsel contended that the undisputed medical records are sufficient for this court to assess a compensation amount and apply the cap if necessary.

Respondent's Response posited, *inter alia*, that 42 U.S.C. § 300aa–15(a)(4) and *Youngblood*'s application of the statutory cap to future damages make it clear that "other Federal or State statutory caps on non-economic damages are irrelevant to the outcome of petitioners' [Motion for Review]." (Resp't's Resp. Court Order 1–2, ECF No. 188.) Moreover, respondent added, the Vaccine Act is not a replacement for state litigation; accordingly, reference to other limitations of damages is inapt. And, "[b]ecause

respondent's legal position was that petitioners' recovery was statutorily limited to the death benefit provided by 42 U.S.C. § 300aa–15(a)(2), respondent declined to brief the 'appropriate' amount of any pain and suffering award granted by the special master." (*Id.* at 5.) Respondent concluded that petitioners failed to establish that the special master's decision to award $60,000 for Hayley's pain and suffering and emotional distress was arbitrary, capricious or otherwise not in accordance with law. (*Id.* at 2.)

Respondent claimed that:

there was "nothing improper" in the special master's referring to awards for pain and suffering and emotional distress in other vaccine injury cases as an aid to determining the proper amount of damages in this case. *See Doe/34 v. Sec'y of HHS*, 87 Fed.Cl. 758, 767–68 (2009) (affirming the Chief Special Master's award of $5,000 for 30 days of past vaccine-related pain and suffering) (*citing Saxton v. HHS*, 3 F.3d 1517, 1519 (Fed.Cir.1993) (holding that the special master did not err in using his prior experience with attorneys in reviewing a fee petition); *Ultimo v. HHS*, 28 Fed.Cl. 148, 152–53 (1993) ("It is incumbent upon the Chief Special Master to apply his body of knowledge ... to the resolution of Vaccine Act cases; it is important for a court to bring to the case general knowledge as well as the ability to analyze the instant facts.")); *see also* 42 U.S.C. § 300aa–15(a)(4).

(Resp't's Resp. 3–4, ECF No. 188.)

At oral argument, respondent characterized *Youngblood* as rejecting the computation of compensation before the application of the cap which is what petitioners propose here. Respondent again declined to take a position on the amount of compensation the court should award for Hayley's pain and suffering and emotional distress should it be determined that the special master erred in applying this policy, and also took no position on this court's discretion to enter its own find-

---

9. Respondent apparently interpreted petitioners' statement that "Congress simply instructed this Court to award $250,000 *in any case* where a person has experienced $250,000 in pain and suffering or the person experienced $250,000 in

emotional distress" as mandating a $250,000 award in every case. (Resp't's Mem. 4–5, ECF No. 184 (emphasis in original) (citing Pet'rs' Mem. 12, ECF No. 171).)

ings pursuant to 42 U.S.C. § 300aa–12(e)(2)(B).

### Discussion

■ The Vaccine Act provides for compensation "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." 42 U.S.C. § 300aa–15(a)(4). "If the statute is clear and unambiguous, then the plain meaning of the statute is generally conclusive, and we give effect to the unambiguously expressed intent of Congress." *Indian Harbor Ins. Co. v. United States*, 704 F.3d 949, 950 (Fed.Cir.2013) (citing *Sullivan v. Stroop*, 496 U.S. 478, 482, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990)). *See also Hall v. United States*, 677 F.3d 1340, 1345 (Fed.Cir.2012).

Precedent is in accord. In *Youngblood*, the special master assessed damages of $100,000 for past and $180,000 for future pain and suffering and emotional distress. The Federal Circuit explained that first, the $250,000 cap is "applied" and then, because the award in *Youngblood* included future pain and suffering and emotional distress, as to that portion, the discount to present value is taken to arrive at the net award.[10]

> We read the statute as providing that § 300aa–15(f)(4) determines the amount of the award to be paid in a lump sum after compensation has first been determined under the first five subparagraphs of § 300aa–15, including the subparagraph (a)(4) provision for pain and suffering with its statutory cap. We are therefore convinced that in calculating the amount of compensation for pain and suffering and emotional distress under the Vaccine Act, the statutory cap of § 300aa–15(a)(4) must be applied[11] when determining the

amount of "compensation" and the discount provision of § 300aa–15(f)(4)(A) must then be applied to the "compensation" amount to determine the immediate lump sum that is to be paid.

32 F.3d at 554–55 (emphasis supplied). If initial compensation could never exceed $250,000, or were on a sliding scale of zero to $250,000, then the statutory cap could never be "applied."

In *Youngblood*, the petitioner objected to the significant reduction of compensation for future pain and suffering and emotional distress by application of the cap first and then the discount to present value. In this context, the Federal Circuit responded to petitioner's observation that with this sequence, the $250,000 cap would never be awarded, rendering that statutory amount superfluous. Not so, the Federal Circuit concluded, reasoning that the cap had meaning even as a starting point for present value reduction and had viability "as an absolute," if necessary to reduce damages for past pain and suffering and emotional distress "greater than $250,000"—an acknowledgment that the initial pre-cap assessment could exceed that amount.

> The Youngbloods argue that application of the statutory cap before discounting means that the maximum statutory amount will virtually never be paid out, which they argue makes the cap almost meaningless. As a limit on the award for pain and suffering, however, the statutory cap is not meaningless even if the amount awarded is later discounted to less than $250,000. Further, as the Court of Federal Claims recognized, **the statutory cap will also**

---

**10.** Except as provided in subparagraph (B) [concerning pre-October 1, 1988 vaccine-related injuries], payment of compensation under the Program shall be determined on the basis of the net present value of the elements of the compensation and shall be paid from the Vaccine Injury Compensation Trust Fund established under section 9510 of Title 26 in a lump sum of which all or a portion may be used as ordered by the special master to purchase an annuity or otherwise be used, with the consent of the petitioner, in a manner determined by the special master to be in the best interests of the petitioner.

42 U.S.C. § 300aa–15(f)(4)(A). As compensation here is for Hayley's suffering prior to her death, the discount to present value has no relevance.

**11.** Definitions of "apply" include "[t]o put to use with a particular subject matter apply the law to the facts." *Black's Law Dictionary* 116 (9th ed. 2009) (angle brackets in original). Similarly, a "cap" tops off something otherwise higher—like capping an oil well. These definitions and applications are also consistent with the myriad of cases applying other statutory caps (samples cited herein).

come into play in absolute [12] terms **whenever the past pain and suffering portion of the award is greater than $250,000.**

*Id.* (emphasis supplied).[13]

The Federal Circuit reaffirmed *Youngblood* in *McAllister v. Secretary of Health and Human Services,* 70 F.3d 1240 (Fed.Cir. 1995). In *McAllister,* compensation for future pain and suffering was assessed at more than $500,000 and then capped at $250,000. 70 F.3d at 1241, 1242. Reaffirming the application of the cap before the discount to present value, the Federal Circuit did not criticize the initial assessment of compensation of approximately $500,000 for future suffering, the number to which the cap was applied.

The limitation is in the actual award, not the amount prior to the application of the cap. What respondent advocates would transform $250,000 from a cap to be applied absolutely to reduce larger awards, to a maximum ceiling for past pain and suffering and emotional distress reserved for a worst-case scenario of the most extreme pain suffered and comprehended for the longest time prior to death, compared to other vaccine-injured petitioners. The court concludes that this unwritten policy artificially and absolutely limits any initial compensation determination to no more than $250,000, thereby preventing the cap from being applied "**whenever** [every time that] the past pain and suffering portion of the award is **greater** than $250,000" explanation of the Federal Circuit in *Youngblood.*[14] 32 F.3d at 555 (emphasis supplied).

Respondent cited supporting legislative history included in the special master's decision that it was not intended that all petitioners be awarded $250,000 compensation for suffering.

(4) Pain and Suffering. Awards for pain, suffering, and emotional distress are authorized to be made at a level not to exceed $250,000 for each petition. As contrasted with the fixed death benefit, the award for pain and suffering is to be set at the discretion of the Master and of the court. The Committee does not intend that all petitions for which compensation is awarded be given this maximum level but rather that the Master consider the individual pain and suffering of the injured person, as well as the benefits conferred by other forms of compensation within the legislation.

(Resp't's Resp., ECF No. 184 5–6 (citing H.R.Rep. No. 99–908, at 21 (1986)), reprinted in 1986 U.S.C.C.A.N. 6344, 6362 and Published Ruling Regarding Pain and Suffering 4, ECF No. 169.)

However, Congressional anticipation that half those suffering from a vaccine-related injury would receive $250,000 was cited by the petitioners in *Youngblood* in advocating that the cap should not be applied until after discounting, which is the only way half of those injured would receive an award at that level it was argued. The Federal Circuit responded:

the Youngbloods rely on a statement in the House of Representatives Report estimating that "the maximum amount for pain and suffering would be paid to half the awardees." H.R.Rep. No. 100–391, 100th Cong., 1st Sess. at 694, reprinted in 1987 U.S.C.C.A.N. at 2313–1, 2313–368, 2313–369. They argue that, if the statutory cap is applied prior to the discount provision, a significant number of awardees will not receive the maximum amount because awards under the Vaccine Act are likely to go to children whose past pain and suffering would be relatively lower than their

---

**12.** Definitions of "absolute" include "[f]ree from restriction, qualification, or condition <absolute ownership> [; c]onclusive and not liable to revision <absolute delivery>." *Black's Law Dictionary* 7 (9th ed. 2009) (angle brackets in original).

**13.** That *Youngblood* held that damages are capped and then discounted just like any other component of future damages, is not inconsistent with the court's conclusion here that damages are assessed and then the cap applied.

**14.** Respondent does not contend the cited special master policy is incorporated in either a rule of the Office of Special Masters or of the Court of Federal Claims. Congress directed that "[t]he special masters shall recommend rules to the Court of Federal Claims and, taking into account such recommended rules, the Court of Federal Claims shall promulgate rules pursuant to section 2071 of Title 28." 42 U.S.C. § 300aa–12(d)(2).

future pain and suffering. The Court of Federal Claims' decision on appeal here was based in large part on this same reasoning. We do not discern from the legislative history, however, a clearly expressed intent by Congress that is contrary to the plain language of the statute.

*Youngblood*, 32 F.3d at 555 (citation omitted).

This special master is not alone in applying this continuum policy. In *Hocraffer v. Sec'y of HHS*, No. 99–533V, 2007 WL 914914 (Fed. Cl.Spec.Mstr. Feb. 28, 2007), Chief Special Master Golkiewicz, citing the House Report and quoting another special master, reasoned that:

> to fairly treat all petitioners, the Special Masters have attempted to create a continuum of injury, awarding the highest pain and suffering to the most injured and reducing the pain and suffering for lessor injuries. Thus in *Long v. Secretary of HHS*, No. 94–310V, 1995 WL 470286 (Fed. Cl.Spec.Mstr. July 24, 1995), Special Master Hastings stated that:
>
> > It is, of course, obvious that there is no scientific or mechanical way to quantify the monetary worth of the physical pain and emotional distress that an injured person suffers. Any resolution is inherently a "judgment call." I must start, however, by stating my general view that the "typical" Program case should not call for a figure at or near the maximum $250,000 level set by the statute. Note that the legislative history states that Congress "does not intend that all petitions for which compensation is awarded be given this maximum level." (H.R. Rpt. No. 99–908, 99th Cong., 2d Sess., pt. 1 at p. 21, reprinted at 1986 U.S.Code Cong. & Admin. News p. 6362.) Further, it must be kept in mind that the $250,000 maximum was established in the context of a Program in which it was clearly anticipated that many if not most claimants would be individuals with severe brain damage allegedly attributable to "DPT" inoculations. In my view, under the Program,

amounts at or near the $250,000 "cap" should be reserved for individuals who have suffered the worst types of injuries, especially brain damage. Moreover, it seems to have become the norm in Program cases that even many individuals with ongoing seizure disorders, serious neurologic problems, and/or significant mental deficiencies have been limited to awards in the $100,000 to $150,000 range. (Citations omitted.) Clearly, the problems of the petitioner here, while truly unfortunate, do not compare to those of the individuals in the six cases enumerated above, and many other cases like those six, in which similar pain and suffering awards have been made.

*Hocraffer*, 2007 WL 914914, at *5–6 (quoting *Long*, 1995 WL 470286, at *12 and *McAllister v. Secretary of HHS*, No. 91–1037V, 1993 WL 777030 (Fed.Cl.Spec.Mstr. Mar. 26, 1993)).[15]

Of the three factors cited for assessing compensation under the special master policy—severity of injury, awareness, and duration of the suffering—respondent cited only duration as reasoning for the special master's downward adjustment from $250,000 in Hayley's case. The forty-five days Hayley suffered is relatively brief, respondent voiced, compared to other vaccine-injured petitioners who suffer for decades. Determination of damages and then the application of the $250,000 cap if necessary, however, accommodates variations in individual cases in assessing damages prior to the application of the cap. The cap assumes overflow, that is, suffering of greater intensity, duration and cognizance, which absent the cap would garner a higher award. In contrast, the policy applied by the special master of how much less than the cap to award, does not accommodate *Youngblood*'s instruction that the cap is "applied" to any award for past pain and suffering and emotional distress "greater than $250,000."

Furthermore, the statutory language speaks of a singular award not to exceed $250,000, not the forcing of all suffering

---

**15.** The Federal Circuit subsequently required the discount to present value after the application of the $250,000 statutory cap to the $500,000 for future suffering, applying *Youngblood*. *McAllister*, 70 F.3d at 1240.

awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly. Consequently, the full $250,000 for pain and suffering and emotional distress is "rarely" awarded.[16] This special master policy is not rooted in the statute or precedent, and its application in the determination of compensation for Hayley's pain and suffering and emotional distress was legally deficient.

Analogy to the application of other statutory caps to larger amounts is appropriate. *See McAllister*, 70 F.3d at 1243 (referring to the "general principles of the law of damages"). In *Arizona, Department of Law, Civil Rights Division v. ASARCO, LLC*, 798 F.Supp.2d 1023, 1046–47 (D.Ariz.2011), a jury award of $868,750 in punitive damages in a sexual harassment case was reduced to the $300,000 cap in 42 U.S.C. § 1981a(b)(3)(D). Addressing a claim that the punitive damages were unconstitutionally excessive compared to the compensatory or nominal damages awarded, selecting the amount assessed by the jury rather than the $300,000 capped amount for that analysis, the court explained that "the nature of a cap is precisely that it limits the amount of damages, compensatory and punitive, that might **otherwise** have been awarded." 798 F.Supp.2d at 1046 (emphasis in original). In *Hall v. Stormont Trice Corp.*, 976 F.Supp. 383 (E.D.Va.1997), the $200,000 cap in 42 U.S.C. § 1981a(b)(3) for that particular employer was construed as applying to plaintiff's total recovery rather than to each count of the Complaint, and because the jury would not be informed of the cap, "the amount that can be requested from the jury will not be limited." 976 F.Supp. at 386. *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 609–10 (5th Cir.2007) applied a Texas statute limiting punitive "damages awarded" to $200,000, reducing a $1,000,000 award to $200,000. *See also Jenkins v. Patel,* 471 Mich. 158, 684 N.W.2d 346, 354 (2004) (concluding that the "shall not exceed" cap on

medical malpractice noneconomic damages did not diminish the ability of the jury or the court to assess compensatory damages; rather, it limited an award in excess of the cap); *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 891 (Tex.2000) (applying Texas statutory cap on punitive damages in personal injury cases that " 'may not exceed four times the amount of actual damages or $200,000, whichever is greater' " to a jury award that exceeded that amount); *Lucas v. United States,* 807 F.2d 414, 416–17 (5th Cir.1986) (applying Texas statutory cap to damages greater than the cap awarded under the Federal Tort Claims Act); *Richards v. United States,* 369 U.S. 1, 11–16, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962) (explaining that under the Federal Tort Claims Act, the law, including statutory damage caps of the state where the negligence or injury occurred, apply).

Cases cited by petitioners in their Supplemental Memorandum are in accord. In *Estate of McCall v. United States,* 663 F.Supp.2d 1276, 1295 (N.D.Fla.2009), a medical malpractice case under the Federal Tort Claims Act, the court assessed $1,500,000 in noneconomic damages and then applied Florida's statutory cap to reduce the award to $1,000,000. In *Depaoli v. Vacation Sales Associates,* 489 F.3d 615, 620 (4th Cir.2007), the jury assessed damages and the court reduced the award to the cap of 42 U.S.C. § 1981a(b)(3)(C). *Rosado Sostre v. Turabo Testing, Inc.,* 364 F.Supp.2d 144, 147–48 (D.P.R.2005) also applied the cap to a jury award in excess of that amount. *Feighery v. York Hospital,* 38 F.Supp.2d 142 (D.Me.1999) discussed what damages were subject to a state statutory cap and whether the jury should be informed of it,[17] and *Douglas v. Children's Hospital,* 69 So.3d 434 (La.App. 4 Cir.2010) recognized the statutory cap on certain malpractice damages was to promote the medical profession (which is not inconsistent with the admitted purpose of the Vaccine Act to compensate with generosity while maintaining an adequate supply of vaccines)

---

**16.** Notwithstanding this observation, it was also noted that this case is rare and that most cases of pain and suffering involve future damages.

**17.** In most instances, the jury is not informed of the cap; rather, if the jury awards damages greater than the cap, the court reduces the award accordingly which is what petitioners advocate here.

and applied the cap to a larger jury award. *Id.* at 439, 465–66.

Vaccine cases applying a prior $30,000 statutory cap also have relevance in that initial assessment of compensation was reduced to the cap. *See Brown v. Sec'y of HHS*, 920 F.2d 918, 921 (Fed.Cir.1990) (resolving controversy over what damages were subject to the limitation, applying cap to the sum of lost wages, pain and suffering, and attorneys' fees); *Strother v. Sec'y of HHS*, 21 Cl.Ct. 365, 376 (1990) (applying cap to recommended award of $150,000 for pain and suffering, $334,328 for lost wages and $12,890.95 for attorney fees and costs); *Shaw v. Sec'y of HHS*, 18 Cl.Ct. 646, 652 (1989) (applying cap to recommendations of $200,000 for pain and suffering, $484,532 for lost wages and $10,350.42 for attorney fees and costs). *See also Beck v. Sec'y of HHS*, 924 F.2d 1029 (Fed.Cir.1991) (applying cap to attorney fees whether characterized as "fees" or "costs"); *Newman v. Sec'y of HHS*, No. 88–17V, 1989 WL 250112, at * 14 (Cl.Ct.1989) (recognizing that "a reasonable charge for the services of petitioner's counsel would exceed $30,000," but awarding the $30,000 cap). Those fees were not analyzed by placing them on a continuum or scale of other damage assessments with $30,000 as a ceiling, but were, as concluded here, by assessing compensation and applying the cap if necessary.

And, not without relevance, the cap on attorney fees under the Equal Access to Justice Act (EAJA) is not a ceiling reserved only for the most experienced and expensive counsel, but accommodates (and indeed anticipates) higher rates and the application of the cap. 28 U.S.C. § 2412(d)(2)(A) ("[A]ttorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."). *See Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1583 (Fed.Cir. 1991) (explaining that EAJA cap reduces higher rates); *Dalles Irrigation Dist. v.*

*United States*, 91 Fed.Cl. 689, 703 (2010) (describing the hourly rate as a cap).

Because the special master's assessment of compensation was based on an erroneous construction of the statute, petitioners requested this court assess damages for Hayley's pain and suffering and emotional distress, free of the artificial continuum imposed.[18]

The Vaccine Act at § 300aa–12(e)(2)(B) expressly empowers this Court to "issue its own findings of fact and conclusions of law" when it finds the Decision of a special master deficient, whether on legal or fact finding grounds. A special master's findings or legal conclusions may be simply set aside. *Id.* The special master's Decision is deficient on both grounds. Petitioners move this Court to set aside the special master's Decision and enter an Order awarding pain and suffering and emotional distress damages in the amount of $250,000, in addition to the death benefit award which has previously been ordered.

(Pet'rs' Supp. Mem. 7, ECF No. 189–1.)

No credibility determinations are involved nor is evidence on Hayley's suffering other than the undisputed medical records which the court has already reviewed several times. Respondent did not take a position on the amount of compensation, nor on this court's ability to assess compensation for Hayley's pain and suffering and emotional distress and apply the $250,000 statutory cap if necessary. Neither did respondent contend that if legal error is found, remand to the special master is required. Moreover, this case is more than ten years old; Hayley died more than twelve years ago.

Upon a finding of legal error by the special master the Federal Circuit in *Althen* rejected the government's objection to fact finding by the Court of Federal Claims under the correct legal standard rather than a remand.

As a preliminary matter, because the special master's decision was not in accordance with law, the trial court was permitted to review the evidence anew and come to its own conclusion. 42 U.S.C. § 300aa–

---

18. The statute provides for a singular award not to exceed $250,000. Petitioners observe that the special master's Opinion assessing damages in

this regard references only emotional distress. It is apparent that the $60,000 award was for pain and suffering and emotional distress.

12(e)(2)(B); [19] *Saunders v. Sec'y of Health & Human Servs.*, 25 F.3d 1031, 1033 (Fed. Cir.1994). So long as the record contained sufficient evidence upon which to base predicate findings of fact and the ultimate conclusion of causation, which it did, the trial court was not required to remand. *Althen v. Sec'y of HHS*, 418 F.3d 1274, 1281 (Fed.Cir.2005) (footnote in original). *See also de Bazan v. Sec'y of HHS*, 539 F.3d 1347, 1350–51 (Fed.Cir.2008). In *Althen*, the Federal Circuit invalidated the so-called *Stevens* policy of the special masters for establishing causation, finding prongs 2 and 3 were inconsistent with the statute. *See Capizzano v. Sec'y of HHS*, 440 F.3d 1317, 1328 n.8 (Fed.Cir.2006) (finding other parts of that special master policy were infirm and remanding to the Court of Federal Claims to determine causation or in the court's discretion remand to the special master).

■ The court is not discounting the special master's expertise. Rather, in concluding legal error, "[q]uestions of law regarding the interpretation or implementation of the Vaccine Act are matters for the courts." *Althen*, 418 F.3d at 1280. "When the court's review of a special master's decision involves statutory construction or other legal issues, the 'not in accordance with law' standard is applied." *Contreras v. Sec'y of HHS*, 107 Fed.Cl. 280, 290 (2012) (citing *Hines v. Sec'y of HHS*, 940 F.2d 1518, 1527 (Fed.Cir.1991)). In this instance, the policy applied by the special master was not in accordance with the statute and precedent. *See Morse v. Sec'y of HHS*, 93 Fed.Cl. 780, 790 (2010) (acknowledging the deference given to a special master to reduce attorney rates and hours in handling fee petitions, but entering its own findings because "the special master appears to have relied on an economic rationality test that has no support in the binding precedent of this circuit governing cases brought under the Vaccine Act").

Moreover, while not common, assessment of compensation for pain and suffering and emotional distress by the Court of Federal Claims is not without precedent. For example, in *Elk v. United States*, 87 Fed.Cl. 70 (2009) the court awarded pain, suffering and emotional distress damages of $250,000 for the sexual assault of a tribal member by an Army officer under the so-called "bad man" clause of the Sioux Treaty of 1868.[20] *See Richard v. United States*, 677 F.3d 1141, 1145 (Fed.Cir.2012) (reaffirming that the jurisdiction of the Court of Federal Claims under the "bad man" provision of the Laramie Treaty of 1868 for damages for personal losses is not limited to actions by government actors). In the Congressional Reference case, *Benoit v. United States*, No. 98–858X,

---

**19.** Section 300aa–12(e)(2)(B) states, in relevant part:

> (2)Upon the filing of a motion [to review the special master's decision], the [United States Court of Federal Claims] shall have jurisdiction to undertake a review of the record of the proceedings and may thereafter—
>
> . . .
>
> (B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law **and issue its own findings of fact and conclusions of law**[.]

42 U.S.C. § 300aa–12(e)(2)(B) (emphasis and bracketed material in original).

**20.** In this regard the court observed:

> Outside of cases under the Vaccine Act, in which "pain and suffering" damages are often awarded (subject to a statutory cap), there are few decisions in this court, the Court of Claims or the Federal Circuit that deal with the determination of such damages. *See Howard v. United States*, 101 Ct.Cl. 823, 830 (1944). This

is unsurprising given that this court generally lacks jurisdiction under the Tucker Act over tort actions. 28 U.S.C. § 1491(a)(1). Nonetheless, the few decisions that discuss this task talk in terms of it being a "jury question." *Howard*, 101 Ct.Cl. at 830. Such references bring to mind the potential use here of the "jury verdict method," which is "most often employed when damages cannot be ascertained by any reasonable computation from actual figures." *Dawco Constr., Inc. v. United States*, 930 F.2d 872, 880 (Fed.Cir.1991), *overruled on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed.Cir.1995); *see also United States v. Smith*, 94 U.S. 214, 219, 24 L.Ed. 115 (1876); *Hi–Shear Tech. Corp. v. United States*, 356 F.3d 1372, 1376 (Fed.Cir. 2004). In order to adopt the jury verdict method, "[a] court must first determine three things: (1) that clear proof of injury exists; (2) that there is no more reliable method for computing damages; and (3) that the evidence is sufficient for a court to make a fair and reasonable approximation of the damages." *Dawco*, 930 F.2d at 880.

87 Fed.Cl. at 96 (footnote omitted).

2000 WL 1134472 (Fed.Cl. July 28, 2000), adopted, 2001 WL 567737 (Fed.Cl. May 23, 2001), cited to the parties in the undersigned's request for supplemental briefing, damages were assessed for the 1983 wrongful death of David Benoit, the three-year-old son of Sergeant First Class James D. Benoit and Wan Sook Benoit, including $100,000 for pain and suffering, based on conflicting record evidence as to how long David remained conscious prior to his death on June 29, 1983 at approximately 1:00 a.m. following his seven-story fall from military housing around 7:30 p.m. on June 28th. 2000 WL 1134472 at *3, *8–9. The Court of Federal Claims Hearing Officer, acknowledging the difficulty of assessing damages for pain and suffering of a young child, cited to two state law cases for guidance, a 1982 case that awarded $150,000 for several months of pain and suffering from burns prior to the child's death, and a 1991 case awarding $100,000 for "several hours of pain and suffering of a young child whose death was preceded by several violent seizures." *Id.* at *9 (footnote and citations omitted). *Burt v. United States,* 199 Ct.Cl. 897, 1972 WL 131053 (1972), another Congressional Reference case, awarded compensation including for past pain and suffering ($25,000 and $10,000 respectively) to two news reporters covering civil strife in the Dominican Republic who were wounded by United States Marines dispatched to protect Americans. 199 Ct.Cl. at 914–16, 1972 WL 131053, at *10–11. Certificate of innocence cases can and have required assessment of compensation for pain and suffering and emotional distress. *See generally Lyons v. United States,* 99 Fed.Cl. 552, 560 (2011) (applying 28 U.S.C. § 2513(e) granting this court jurisdiction over claims for unjust conviction and imprisonment and providing for damages not to exceed $100,000 per year).

### Assessment of compensation

 Neither expressions of sympathy nor any sum can fully compensate for or soothe the ordeal of Hayley's suffering and death; however, as the parties recognize, recompense in this forum is constrained by the Vaccine Act.

Respondent cites other vaccine cases awarding damages for pain and suffering and emotional distress less than $250,000 as supporting the reasonableness of the $60,000 award in this case, including those cited by the special master. *Bragg v. Sec'y of HHS,* No. 08–477V, 2012 WL 404773, at *29 (Fed. Cl.Spec.Mstr. Jan. 18, 2012) (awarding $25,000 for pain and suffering to the estate of decedent); *Hocraffer,* 2007 WL 914914, at *4 (awarding $5,000 for past pain and suffering) (citing *Saxton v. HHS,* 3 F.3d 1517, 1519 (Fed.Cir.1993) (finding no error in the special master's experience with counsel in reviewing a fee petition)); *Long v. Sec'y of HHS,* No. 94–310V, 1995 WL 470286, at *12 (Fed. Cl.Spec.Mstr. July 24, 1995) (stating "it seems to have become the norm in Program cases that even many individuals with ongoing seizure disorders, serious neurologic problems, and/or significant mental deficiencies have been limited to awards [for physical pain and emotional distress] in the $100,000 to $150,000 range") and *Ultimo v. Sec'y of HHS,* 28 Fed.Cl. 148, 152–53 (1993) ("It is incumbent upon the Chief Special Master to apply his body of knowledge ... to the resolution of Vaccine Act cases; it is important for a court to bring to the case general knowledge as well as the ability to analyze the instant facts.").

On the other hand, there has been recognition by the special masters that outside the Vaccine Act, compensation for serious brain injuries are "far in excess of the statutory cap."

Typically, the awards for pain and suffering in civil cases involving permanent brain damage are far in excess of the statutory cap of $250,000 imposed on the litigant in this forum. *See Caron v. United States,* 548 F.2d 366 (1st Cir.1976) (circuit court approved award of $500,000 for pain and suffering in case involving permanent brain damage); *Frankel v. Heym,* 466 F.2d 1226 (3d Cir.1972) (circuit court approved award of $650,000 in permanent brain injury case); *Tinnerholm v. Parke, Davis & Co.,* 411 F.2d 48 (2d Cir.1969) (vaccine injury case in which circuit court upheld award of $400,000 for pain and suffering). In *Hoskie,* the court stated, and I concur, that the compensable pain and suffering from injuries to the brain ex-

tends far beyond that suffered at the time the initial injury occurs. *Hoskie v. United States,* 666 F.2d 1353, 1358 (10th Cir.1981). Indeed, recently, Judge Harkins found "conservative" an award of $100,000 for past pain and suffering and $50,000 for future pain and suffering for an individual who was in a coma. *Edgar v. Secretary of HHS,* 26 Cl.Ct. 286, 288(1992).

*Euken v. Sec'y of HHS,* No. 91–1059V, 1992 WL 132548, at *7–8 (Ct.Cl.Spec.Mstr. May 28, 1992) (awarding $100,000 for past pain and suffering to a three-year old with profound mental and physical defects who experienced an average of one seizure a day and grand mal seizures three times a week), *rev'd on other grounds,* 34 F.3d 1045 (Fed.Cir. 1994). *See also Stotts v. Sec'y of HHS,* No. 89–108V, 1990 WL 300674, at *5 n.2–3 (Fed. Cl. Spec. Mstr. June 3, 1990) (awarding $250,000 for future pain and suffering, noting that absent the cap the award would have been $500,000). And, as noted earlier, in *McAllister v. Secretary of Health and Human Services,* 70 F.3d 1240 (Fed.Cir.1995) the $250,000 statutory cap was applied to a $500,000 pain and suffering award and then discounted to present value. The special master's decision in *McAllister* acknowledged that "[i]t is also clear that a review of pain and suffering awards in the traditional tort system establishes that awards in the traditional system far surpass the $250,000 provided under the Vaccine Act for like cases." *McAllister v. Sec'y of HHS,* No. 91–1037V, 1993 WL 777030, at *3 (Fed.Cl.Spec. Mstr. March 26, 1993) (citations omitted), *vacated and remanded on other grounds,* 70 F.3d 1240 (Fed.Cir.1995). In *Brustuen v. Sec'y of HHS,* No. 90–3936V, 1992 WL 167284, at *1 (Fed. Cl. Spec. Mstr. June 25,

1992) the special master generally agreed that with the injuries in that case, damages for pain and suffering would be "far in excess of $250,000."

Petitioners argue that the appropriate overall award amount, to cover both past and future suffering, would, absent the $250,000 cap, be far in excess of $250,000. The respondent argues generally that some amount less than $250,000 is appropriate.

In general, I agree with petitioners. *Id.* In *Brustuen,* several federal non-Vaccine Act cases upholding large pain and suffering awards were cited, noting that "[a] nearly endless list of similar cases could be cited, but the point would remain the same: that absent the $250,000 cap, this case would call for an overall pain and suffering award well in excess of $250,000." *Id.* at *2.

Petitioners request that the court conclude that compensation for Hayley's pain and suffering and emotional distress exceeds $250,000; therefore, the cap applies and $250,000 should be awarded.[21]

■ The court reviewed the twelve-page line chart attached to Petitioners' Pain and Suffering and Emotional Distress Memorandum. (ECF No. 167–1.) This timeline, which is not exhaustive,[22] lists some of the medications, procedures and observations of Hayley's pain and suffering and emotional distress, including: sleepiness and sleeplessness; lumbar punctures (4); difficulty with peripheral IV access; femoral central line placement (three attempts); intubation; urinary catheter; sepsis; dysphagia (difficulty swallowing); low blood oxygen levels; moaning (sometimes chronic); crying (sometimes chronic); intermittent vomiting; seizures of

---

21. At oral argument petitioners conceded damages for pain and suffering and emotional distress cannot be established by default; rather, petitioners' burden remains, and for quantum, one million dollars for pain and suffering and one million for emotional distress was suggested which, upon application of the cap, would result in one award of $250,000. Oral argument, Nov. 8, 2012, comments of Mr. Richard Gage, at 3:34:00–3:35:00 p.m. and 3:43:36–3:43:50. Oral argument was recorded using the court's electronic digital recording (EDR) system. The times noted refer to the EDR record of the argument.

22. Counsel represented that petitioners, who were present at oral argument, did not want to endure details of Hayley's pain and suffering and emotional distress. Accordingly, the foregoing is taken from petitioners' submission which includes record references. Respondent did not contend the timeline was inaccurate. The court again reviewed Hayley's ordeal documented in her medical records. (Compl., Dkt. 1, Exs. 2, 3; Medical Records, Dkts. 9, 17, Exs. 9, 10.)

increasing occurrence and severity; MRIs (4) of the brain and/or cervical spine; NG (nasogastric) tube placement through nose to stomach and removal due to severe discomfort; G (gastrostomy) tube placement and eventual repair; pain medications including Valium, Tylenol with Codeine, and Morphine; ketogenic diet[23] trials (2) resulting in hypoglycemia; coma; and death. The court has also viewed again the photographs of Hayley prior to her vaccination and during her hospitalization. (Exs. 36, 37 and 38 filed December 26, 2007, Dkt. 71.)

The overarching purpose of the Vaccine Act and the National Childhood Vaccine Injury Compensation Program it created is to award compensation "to vaccine-injured persons quickly, easily, and with certainty and generosity." H.R. Rep. No. 99–908, at 3. Remedial legislation like the Vaccine Act should be construed in a manner that effectuates its underlying spirit and purpose. *See Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561–62, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987).

*Cloer v. Sec'y of HHS*, 675 F.3d 1358, 1362 (Fed. Cir. 2012) (en banc), *cert. granted*, —— U.S. ——, 133 S.Ct. 638, 184 L.Ed.2d 452 (2012) (No. 12-236).[24] "[I]t is clear from the legislative history that Congress intended the Vaccine Act's compensation program to be more generous than the civil tort system." *Cloer v. Sec'y of HHS*, 654 F.3d 1322, 1350 (Fed.Cir.2011) (footnote omitted), *cert. denied*, —— U.S. ——, 132 S.Ct. 1908, 182 L.Ed.2d 807 (2012).[25]

The court concludes, upon review of the record, cases cited herein and survey of other pain and suffering and emotional distress awards in other non-Vaccine Act cases, that compensation for the pain and suffering and emotional distress endured by Hayley would be greater than $250,000 and is accordingly capped at that amount. *See Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905–07

(6th Cir.2004) (upholding $900,000 award for at most seventeen minutes of physical and mental pain and suffering prior to death caused by positional asphyxia, asphyxia from gastric aspiration or cardiac arrest following law enforcement detention and restraint); *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 156 (6th Cir.1996) (upholding awards of $400,000, $1,350,000, and $1,000,000 for predeath pain and suffering of passengers during the twelve-minute airplane descent); *Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1428 (5th Cir.1992) (affirming $1,000,000 pain and suffering award for fourteen-year old who died after being pinned by garage door opener failure; experts testified boy struggled to free himself and may have remained conscious for three to five minutes, and possibly up to several hours before eventually losing consciousness and dying); *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 634–35 (Tex.1986) (upholding $500,000 award to each of four decedents for mental anguish suffered from the time a plane broke up in mid-air at 10,000 feet until it crashed); *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230 (Tex.App.2005) (affirming $1,000,000 for conscious pain and suffering of nursing home resident left unattended in her wheelchair which rolled down a sloped sidewalk, causing serious injuries and death four days later from those injuries); *CIGNA Healthcare of Tex., Inc. v. Pybas*, 127 S.W.3d 400, 404 (Tex.App.2004), *vacated after settlement*, No. 05–03–00517, 2004 WL 585008, at *1 (Mar. 25, 2004) (affirming award of $3,000,000 for pain and mental anguish of a patient discharged from skilled nursing facility without oxygen who suffered for six days before his death from oxygen deprivation); *Cresthaven Nursing Residence v. Freeman*, 134 S.W.3d 214, 228–32 (Tex.App.2003) (reducing a $4,500,000 award to $1,000,000 for pain and mental anguish from broken leg

---

**23.** A ketogenic diet is attempted when two or more seizure medications have not worked. Based on reports more than 80 years ago that seizures could be prevented by fasting, the diet, high in fat, low in carbohydrates and proteins, mimics what the body does when deprived of food. *See* www.epilepsyfoundation.org/aboutepilepsy/treatment/ketogenicdiet/index.cfm (last visited January 3, 2013).

**24.** Review concerns the recoverability of attorneys' fees when the petition was dismissed on statute of limitations grounds.

**25.** Petitioner sought review of the merits of the statute of limitations determination.

sustained in a fall prior to her death fifteen days later, untreated urinary infection and sepsis); *Holland v. Gaden,* 260 A.D.2d 604, 688 N.Y.S.2d 668 (1999) (upholding $500,000 award for past pain and suffering to person hit by a bus, suffered fractured leg in three places that required open reduction surgery, insertion of a metal bar and pins, two subsequent surgeries with irrigation, debridement and skin graft, hospitalization for one month and then five months at a rehabilitation center); *Guzman v. Guajardo,* 761 S.W.2d 506, 512 (Tex.App.1988) (upholding award of $600,000 for pain and mental anguish of a young boy who endured at least fifteen minutes of severe pain after being struck by a truck).

## CONCLUSION

For the reasons stated herein, the court concludes that the special master's assessment of damages for Hayley's pain and suffering and emotional distress was not consistent with the Vaccine Act.

Accordingly, petitioners' Motion for Review (ECF No. 182) is **GRANTED.** The decision of the special master dated August 3, 2012 (ECF No. 181) assessing compensation for Hayley's actual pain and suffering and emotional distress, is **SET ASIDE, in part,** and replaced by the court's own findings of fact and conclusions of law as to that segment of damages. 42 U.S.C. § 300aa–12(e)(2)(B). Based upon the findings and conclusions herein, the court determines that damages for Hayley's actual pain and suffering and emotional distress are in excess of $250,000, and applies the $250,000 statutory cap of 42 U.S.C. § 300aa–15(a)(4).

Accordingly, petitioners are entitled to compensation in the total amount of $505,171.50 consisting of the following:

(A) $250,000 pursuant to 42 U.S.C. § 300aa–15(a)(2) for a vaccine-related death;

(B) $5,171.50 for unreimbursed expenses pursuant to 42 U.S.C. § 300aa–15(a)(1)(A); and

(C) $250,000 for actual pain and suffering and emotional distress pursuant to 42 U.S.C. § 300aa–15(a)(4).

The Clerk of the Court shall enter Judgment accordingly.

It is so **ORDERED.**