# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-408V**
UNPUBLISHED

| | |
|---|---|
| CHARLES OLSON, | Chief Special Master Corcoran |
| Petitioner, | Filed: March 4, 2024 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Ruling on the Record; Damages; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |
| Respondent. | |

*David John Carney, Green & Schafle LLC, Philadelphia, PA, for petitioner.*

*Madelyn Weeks, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION AWARDING DAMAGES[1]

On January 8, 2021, Charles Olson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered from a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"), and entitlement was found in the Petitioner's favor on January 27, 2023. The parties reached on impasse on the appropriate award for pain and suffering, however, requiring its resolution at a "Motions Day" proceeding.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I award **$128,000.00** in damages, representing compensation for actual pain and suffering, plus **$3,796.43** for reimbursement of two Medicaid liens.

## I.      Relevant Procedural History

Following the filing of the Petition, Respondent filed a status report stating that he was interested in discussing a litigative risk settlement. ECF No. 29. Petitioner filed a Motion for Ruling on the Record and Brief in Support of Damages ("Pet. Mot.") on July 15, 2022. ECF No. 30. Respondent filed a Rule 4(c) Report and response on July 29, 2022. ("Report"), ECF No. 31. Petitioner filed a reply on August 4, 2022, addressing Petitioner's arguments. Petitioner's Reply Brief in Support of Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Reply"), ECF No. 32. A second reply was filed on November 7, 2022, stating that a Medicaid lien exists, which has been subcontracted to two parties: $265.65 to Rawlings Company, and $3,799.79 to Optum. Petitioner's Second Reply Brief in Support of Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Second Reply"), ECF No. 35.

A ruling on entitlement was issued on January 27, 2023, and the parties were instructed to discuss damages. ECF No. 36. However, the parties were unable to agree, and Respondent filed a response to Petitioner's damages arguments on March 10, 2023. Respondent's Response to Petitioner's Brief in Support of Damages ("Res. Opp."), ECF No. 39. Petitioner filed a third reply on April 27, 2023. Petitioner's Reply Brief in Support of Damages ("Third Reply"), ECF No. 40. The matter was submitted for an SPU "Motions Day" hearing on February 26, 2024.

## II.      Medical Records

Mr. Olson received a flu shot on September 24, 2019, in his left shoulder. Ex. 1 at 5, 37. He first complained of left shoulder pain on October 17, 2019, rating it as eight out of ten. Ex. 3 at 5, 7. He periodically complained of shoulder pain seven different times between October 2019 and March of 2020. *See*, *e.g.*, Ex. 4 at 77 (record from December 4, 2019 rating his pain as five-to-seven out of ten); Ex. 1 at 92 (record from March 27, 2020 complaining of constant shoulder pain that was impacting his sleep).

On May 14, 2020, Petitioner reported pain as five out of ten, and that he experienced it 51-75% of the time. Ex. 6 at 13. Petitioner then attended ten physical therapy sessions between May 14 and July 27, 2020. *Id.* at 103, 147, 200, 237. His symptoms saw some improvement, and his pain levels were reported as one-to-four out of ten.

An MRI on August 19, 2020 revealed tendinosis, bursitis, and a partial tear of the supraspinatus tendon. Ex. 9 at 67-68. On October 12 and November 4, 2020, Petitioner received two steroid injections. Ex. 9 at 72, 79. He felt some relief, but his pain returned and ultimately, he underwent arthroscopic surgery on May 2, 2021. *Id.* at 106-07. Following surgery, Petitioner attended twelve physical therapy sessions. Ex. 11 at 16. By April 23, 2021, when he was discharged from physical therapy, he rated his pain as one out of ten, and described his shoulder function as excellent.

## III.    Damages

Petitioner is seeking $130,000.00 for pain and suffering for his SIRVA. Pet. Mot. at 29. He also seeks an amount sufficient to reimburse two Medicaid liens. Second Reply. Respondent argues that that the lesser sum of $90,000.00 is more appropriate. Res. Opp. at 9-10. Additionally, he asserts that the Medicaid lien reimbursements should be reduced for specific treatments unrelated to Petitioner's SIRVA. Specifically, Petitioner should be awarded $180.47 to satisfy the Rawlings Company and $3,615.96 to satisfy Optum. *Id.* at 12-13. Petitioner's Third Reply accepts that the Medicaid lien amounts should be reduced for the specific amounts noted by Respondent. Third Reply at 12-13.

## IV.    Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which the petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award

for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (citing *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with that of my predecessor Chief Special Masters) adjudicating similar claims.[3] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum (between zero and the $250,000.00 cap), that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). The Court maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 589-90. Instead, pain and suffering should be assessed by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 593-95. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. While *Graves* does not control the process used herein to calculate pain and suffering, it stands as wise counsel.

## V.    Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Mr. Olson was a competent adult with no impairments that would impact the awareness of his injury. Therefore, my analysis focuses primarily on the severity and duration of Petitioner's injury. When performing this analysis, I review the record as a whole, including the medical records and affidavits filed, all assertions made by the parties

---

[3] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

in written documents, and the arguments presented during the Motions Day hearing.

Petitioner cites to a number of damages decisions involving SIRVA injuries that awarded between $125,000.00 and $145,000.00 for pain and suffering.[4] Pet. Br. at 21-33. Petitioner notes that Mr. Olson suffered a moderate to severe SIRVA over approximately eighteen months, and his treatment involved two steroid injections, an MRI, arthroscopic surgery, and twenty-two physical therapy sessions. *Id.* at 28-29.

Respondent argues that Petitioner's injury was moderate to mild, and that his treatment was fairly conservative until his surgery. Further, by eighteen months post-vaccination, he was essentially back to baseline. Therefore, an award of $90,000.00 is appropriate. Res. Opp. at 9-10. In support, Respondent cites to two cases awarding under $100,000.00: *Hunt v. HHS*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022) (awarding $95,000.00 for pain and suffering); *Shelton v. HHS*, No. 19-279, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021), (awarding $97,500.00 for pain and suffering).

The record in this case best supports the conclusion that Mr. Olson suffered a moderate SIRVA for approximately 18 months. He sought treatment soon after his vaccination. Initially his pain was significant, reported as five-to-seven out of ten for approximately six months and then one-to-four out of ten for an additional five months. Petitioner's initial, conservative treatment was unsuccessful, and he ultimately underwent arthroscopic surgery in May of 2021. He made good progress in his recovery, and by April 23, 2021, Petitioner reported pain levels of one out of ten and excellent function after twelve physical therapy sessions.

Respondent's proposed award of $90,000.00 does not give sufficient credence to the seriousness of Petitioner's injury, and the cases he cites to are outliers in the context of SIRVA damages. The *Shelton* petitioner, for example, waited five months before seeking treatment - a significant delay that greatly impacted the pain and suffering award. *Shelton*, 2021 WL 2550093 at *5, *8. Additionally, *Hunt* featured periods of little-to-no pain reported, including one fifteen-month gap. *Hunt*, 2022 WL 2826662 at *9 n.7. Thus, these comparables are far less persuasive than what Petitioner has offered.

---

[4] *Stromer v. Sec'y of HHS*, No. 19-1969V, 2022 U.S. Claims LEXIS 937, *3 (Fed. Cl. Spec. Mstr. Apr. 8, 2022) (awarding $145,000 for pain and suffering); *Drake v. Sec'y of HHS*, No. 18-1747V, 2020 U.S. Claims LEXIS 1450, *4 (Fed. Cl. Spec. Mstr. Jul. 7, 2020) (awarding $125,000 for pain and suffering); *Blanco v. Sec'y of HHS*, No. 18-1361V, 2020 U.S. Claims LEXIS 1408, *1 (Fed. Cl. Spec. Mstr. Jul. 6, 2020) (awarding $135,000 for pain and suffering); *Stokes v. Sec'y of HHS*, No. 19-752V, 2021 U.S. Claims LEXIS 3061, *5 (Fed. Cl. Spec. Mstr. Dec. 17, 2021) (awarding $125,000 for pain and suffering).

Balancing the severity of his SIRVA injury, the course of treatment, and based on the record as a whole, I find that **$128,000.00** in compensation for actual pain and suffering is reasonable and appropriate in this case.

## VI. Appropriate Reimbursement for Medicaid Liens

Petitioner initially sought $265.65 as reimbursement to Rawlings Company for a lien and $3,799.79 as reimbursement to Optum. Second Reply. Respondent noted that the reimbursements should be reduced for five treatments that were unrelated to Petitioner's SIRVA, resulting in reimbursements of $180.47 to the Rawlings Company, and $3,615.96 to satisfy Optum. In his third reply, Petitioner agreed with that the five treatments should be excluded. Third Reply at 12-13.[5]

## Conclusion

For all of the reasons discussed above, and based on consideration of the record as a whole, **I award Petitioner**

- **$128,000.00 for pain and suffering in the form of a check payable to Petitioner;**

- **A lump sum payment of $180.47, representing compensation for satisfaction of a Medicaid lien, in the form of a check payable jointly to Petitioner[6] and**:

  **The Rawlings Company**
  **Attn: Mike McQuire**
  **P.O. Box 2000**
  **La Grange, KY 40032**

- **A lump sum payment of $3,615.96, representing compensation for satisfaction of a Medicaid lien, in the form of a check payable jointly to Petitioner[7] and**:
  **Optum**
  **L-3994**
  **Columbus, OH 43260-3994**

---

[5] Petitioner's Third Reply altered the amount sought for the liens, seeking $180.47 for The Rawlings Company and $3,807.22 for Optum. Third Reply at 12-13. The amount requested for Optum appears to be a math error.

[6] Petitioner agrees to endorse the check to The Rawlings Company for satisfaction of the Medicaid lien.

[7] Petitioner agrees to endorse the check to Optum for satisfaction of the Medicaid lien.

These amount represents compensation for all items of damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[8] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.